UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

98 OCT 16 PM 1:48

U.S. DISTRICT COURT
N.D. OF ALABAMA

CORDELIA ANN BODIE,    ]
   ]
   Plaintiff(s),    ]
   ]
   vs.    ]    CV 92-N-0103-NE
   ]
CITY OF HUNTSVILLE, et al.,    ]
   ]
   Defendant(s).    ]

ENTERED

OCT 16 1998

## MEMORANDUM OF OPINION



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**CORDELIA ANN BODIE**,                    ]
                                            ]
        Plaintiff(s),                       ]
                                            ]
        vs.                                 ]        CV 92-N-0103-NE
                                            ]
**CITY OF HUNTSVILLE, et al.**,             ]
                                            ]
        Defendant(s).                       ]

I.      INTRODUCTION. ................................................... 1

II.     FACTUAL ALLEGATIONS ............................................ 2

III.    DISCUSSION. ..................................................... 4

        A.      Count One. ................................................. 6

                1.      Statute of Limitations. ................................ 7

                2.      Failure to State a Claim Upon Which Relief Can Be Granted.

                        .................................................. 13

                        a.      Equal Protection. ............................ 14

                        b.      Substantive Due Process. ...................... 22

                        c.      Procedural Due Process. ...................... 26

                3.      Summary. .......................................... 33

        B.      Count Two. ................................................ 34

            1.     Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

            2.     Failure to State a Claim Upon Which Relief Can be Granted.

                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

                  a.     First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . 35

                  b.     Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

                  c.     Substantive Due Process. . . . . . . . . . . . . . . . . . . . . . 46

                  d.     Procedural Due Process. . . . . . . . . . . . . . . . . . . . . . . 53

            3.     Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

C.    Count Three. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

D.    Count Four. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

            1.     Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

            2.     Failure to State a Claim Upon Which Relief Can Be Granted.

                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

            3.     Respondeat Superior. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

            4.     Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

E.    Count Five. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

            1.     Immunity from Personal Liability. . . . . . . . . . . . . . . . . . . . . . . 63

                  a.     Absolute Legislative Immunity. . . . . . . . . . . . . . . . . 64

                  b.     Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . 68

            2.     Failure to State a Claim Upon Which Relief Can Be Granted.

                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

            3.     Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

F.    Count Six. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

G.    Count Seven. ................................................. 77

H.    Counts Eight and Nine. ........................................ 81

I.     Count Ten. ................................................... 85


IV.    CONCLUSION. ...................................................... 91

**MEMORANDUM OF OPINION**

## I.   INTRODUCTION.

This is an action for redress of claimed grievances arising out of an employment

relationship between plaintiff Cordelia Ann Bodie and defendant City of Huntsville

(hereinafter "City"). Bodie initiated this action by filing her complaint on January 10, 1992.

After the court dismissed her complaint on April 22, 1992,[1] Bodie appealed[2] and the

Eleventh Circuit Court of Appeals affirmed. *Bodie v. City of Huntsville*, 987 F.2d 774 (11th

Cir. 1993) (unpublished op.). On a writ of certiorari, however, the U.S. Supreme Court

reversed and remanded this action for consideration in light of its decision in *Leatherman*

*v. Tarrant Co. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), which the

Court decided that same day. *Bodie v. City of Huntsville*, 510 U.S. 801 (1993).

On remand, this court ordered Bodie to amend her complaint, requiring her to

delineate the factual and legal basis for each of her claims against each defendant. This

action is now before the court on motions by each defendant or group of defendants to

dismiss the claims against them in the amended complaint. All motions have been fully

briefed and are ripe for decision. The motions will be granted in part and denied in part.

---

[1] Before the court dismissed her lawsuit, Bodie amended her complaint once as a matter of right, on February 3, 1992, and, on April 1, 1992, Bodie proffered a second amended complaint.

[2] Ms. Bodie was originally represented by attorney. Following the dismissal of her action, she discharged her attorney and has since represented herself. The court takes judicial notice that Bodie graduated from the University of Alabama School of Law in 1993, and that she has been admitted to the practice of law by both the Alabama Bar and the U.S. District Court for the Northern District of Alabama in 1993. *See* West Legal Directory.

1

## II.   FACTUAL ALLEGATIONS.[4]

The City employed Bodie as a Registered Nurse from May 19, 1976, until September 30, 1990. *Complaint* at ¶ 4. She worked at the City Health Clinic (hereinafter "Clinic") throughout her tenure with the City, except for the last two months when she was assigned to the City jail. *Id.* at ¶¶ 5, 45(2).

Bodie purchased her professional liability insurance through defendant James D. Thornton, III, a local independent agent.[5] *Id.* at ¶ 21. In 1987, Bodie claims that someone, possibly former defendant Erroll Fitzpatrick, City Risk Manager, convinced Thornton to add the City as an additional named insured on her insurance policy.[6] *Id.* at ¶ 25. By adding the endorsement to her policy, Bodie claims that Thornton reduced its value to her. *Id.* at 26. When Bodie discovered the endorsement, she objected, but Fitzpatrick and defendant Larry P. Hall, an employee in the City's Department of Risk Management, made her continued employment contingent upon her consent to the endorsement. *Id.* at ¶¶ 15, 27-30.

---

[4] The defendants dispute many of the factual allegations in the complaint, but because this action is before the court on motions to dismiss, the court will treat the factual allegations in the complaint as being true. Furthermore, the court will not repeat all the allegations of the complaint in this brief recitation of the facts. This section merely presents a summary of Bodie's factual allegations in order to place her claims against the various defendants in context. The specific allegations against each defendant or group of defendants will be considered in detail in Section III.

[5] Thornton is allegedly an officer and/or employee of former defendant Wikle, Thornton, Holcombe & Associates, Inc. *Complaint* at ¶ 20. Bodie voluntarily dismissed Wikle, Thornton, Holcombe & Associates, Inc. as a defendant in this lawsuit on September 8, 1997.

[6] Bodie voluntarily dismissed Erroll Fitzpatrick as a defendant in this lawsuit on September 8, 1997. Simultaneously, Bodie dismissed former defendant Richard Liles as a defendant in this lawsuit.

2

Following this dispute over Bodie's professional liability insurance coverage, "management personnel" at defendant Huntsville Hospital[7] ("hereinafter Hospital") commenced a twelve-month study of the health care services provided by the Clinic, which serves employees of the City and inmates of the City jail. *Id.* at ¶ 31. Bodie participated in the study, at the direction of Hall, by preparing a comprehensive report. *Id.* at ¶ 32. The study, which concluded that the Clinic was "efficient and cost effective," culminated in a presentation of its findings to the Huntsville City Council (hereinafter "City Council"). *Id.* at ¶ 33.

Over the course of the study, Bodie became concerned that sanitation and employee safety had deteriorated at the Clinic. *Id.* at ¶ 34. Specifically, Bodie complains of an incident at the Clinic involving a "serious threat" from an unsupervised City jail inmate. *Id.* at 36. Bodie states that she wrote and telephoned Hall in response to the incident but that Hall yelled at her and refused to take action. *Id.* at ¶¶ 36-38. Then, according to Bodie, she took her grievance to the City Personnel Committee. *Id.* at ¶ 39. The City Personnel Committee recommended immediate remedial action, and Bodie appealed her grievance to the City Council. *Id.* at ¶¶ 39-40.

On January 19, 1989, the City Council heard Bodie's grievance, as well as a proposal by Assistant City Attorney, Canty Cooper, for the Hospital to assume management of "the City Health Care System." *Id.* at ¶ 41. On January 4, 1990, the City Council heard another proposal containing several options, all of which involved the Hospital assuming

---

[7] Huntsville Hospital is allegedly incorporated as a municipal corporation in the State of Alabama under the name of "Healthcare Authority of the City of Huntsville," and it is allegedly a "local government entity" of the City. *Complaint* at ¶ 17.

3

management of the City Health Care System. *Id.* at ¶ 44. On January 11, 1990, the City

Council voted to contract with the Hospital to manage the City Health Care System, for one

year, excluding the City jail. *Id.* at ¶ 45(1). This decision resulted in Bodie's transfer from

the Clinic to the City jail. *Id.* at ¶ 45(2). Bodie claims that this transfer, "on its face, was a

demotion." *Id.* at ¶¶ 56, 63. Bodie further claims that the Employee Handbook in effect at the

time created for her a property interest in her employment. *Id.* at ¶¶ 60-61, p. 15 (¶¶ 67-68).[8]

## III.   DISCUSSION.

In her amended complaint, Bodie alleges ten counts against various defendants and

groups of defendants. The named defendants are as follows: (1) the City of Huntsville;[9] *Id.*

at ¶ 6; (2) Huntsville City Councilmen[10] (hereinafter "City Councilmen") in their official

capacities; *Id.* at ¶¶ 6-11, pp. 11-14 (¶¶ 46-65) (Counts One, Two and Three); (2) the City

Councilmen in their individual capacities *Id.* at ¶¶ 6-11, pp. 15-16 (¶¶ 73, 67-72) (Count Five);

(3) Steve Hettinger, Mayor of the City of Huntsville, in his individual capacity; *Id.* at ¶ 12, pp.

19-20 (¶¶ 96-103) (Count Ten); (4) Larry P. Hall, allegedly a former Director of Public and

---

[8] Bodie numbers the paragraphs in her amended complaint sequentially up to paragraph 48 on page 11.
At that point, her numbering starts over at number 47 and continues sequentially until paragraph 73 on page 15.
After the paragraph number 73 on page 15, her numbering starts over at paragraph 67 and continues sequentially
until her last numbered paragraph, number 103, on page 20. Therefore, for the sake of clarity, references in this
opinion to paragraphs number 48 or higher of the amended complaint will refer to both the page number and the
paragraph number.

[9] Bodie names the "City of Huntsville" as a defendant, *Complaint* at ¶ 6, but nowhere in her complaint does
she make specific allegations against this defendant. She does, however, name Huntsville City Councilmen in their
"official capacities" as defendants to Counts One, Two, and Three. An "official capacity" claim against an
individual is actually a claim against the governmental entity for which that individual acts. *Monell v. City of New
York*, 98 S. Ct. 2018, 2035, n.5 (1978). Therefore, the court will consider the City of Huntsville, a local government
entity, as the true defendant to Counts One, Two, and Three.

[10] Specifically, Bodie names the following individuals as "City Councilmen" in her lawsuit: (1) Earnest C.
Kaufman, II; *Complaint* at ¶ 7; (2) Bill Kling, Jr.; *Id.* at ¶ 8; (3) James Putnam; *Id.* at ¶ 9; (4) Richard Showers, Sr.;
*Id.* at ¶ 10; and (5) Dr. James Wall, Jr.; *Id.* at ¶ 11. In this opinion, the foregoing individuals will be collectively
referred to as "City Councilmen."

4

Employee Relations for the City until April 1, 1989, and then allegedly an employee of the City Department of Risk Management, in his individual capacity; *Id.* at ¶ 15 & p. 18 (¶¶ 84-89) (Count Eight); (5) Charles R. Perry, Director of Human Resources for the City, in his individual capacity; *Id.* at ¶ 16 & pp. 18-19 (¶¶ 90-95) (Count Nine); (6) Huntsville Hospital;[11] *Id.* at ¶ 17 & pp. 14-15 (¶¶ 66-72) (Count Four); (7) Jeff Hamilton, who allegedly held the position of vice-president or "other position in management" at the Hospital, in his individual capacity; *Id.* at ¶ 18 & p. 16 (¶¶ 66-72) (Count Six); and (8) James D. Thornton, III, in his individual capacity, allegedly an "officer and/or employee" of a private insurance agency and former defendant, Wikle, Thornton, Holcombe & Associates, Inc. (hereinafter "Wikle, Thornton"); *Id.* at ¶ 20, p. 17 (¶¶ 78-83).

Each of these defendants or group of defendants has moved the court to dismiss the claims against them, and this memorandum of opinion addresses those motions to dismiss. Rather than address each motion individually, the court will analyze each count of the

---

[11]Bodie names "Huntsville Hospital," allegedly "a local governmental entity," as a defendant, *Complaint* at ¶ 17, but nowhere in her complaint does she make specific allegations against this defendant. She does, however, name Jeff Hamilton, allegedly vice-president of Huntsville Hospital, in his "official capacity" as defendant in Count Four. An "official capacity" claim against an individual is actually a claim against the governmental entity for which that individual acts. *Monell v. City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978). Therefore, the court will consider Huntsville Hospital as the true defendant in Count Four.

complaint separately[12] and summarize which claims are due to be dismissed against which defendants in the conclusion.

## A.      Count One.

In Count One of her complaint, Bodie alleges that an Employee Handbook adopted by the City Council created for Bodie "a liberty interest in safe working conditions." *Id.* at 11 (¶¶ 47-48). She further alleges that the City knew about the "unsafe and unsanitary working condition" at the Clinic as early as October 3, 1988, and despite her complaint to the City Council, the City chose to leave her in the same workplace "*until* they made their final decision regarding [her] grievance on January 11, 1990." *Id.* at 11 (¶¶ 47-48) (emphasis in original). On the other hand, according to Bodie's allegations, the City Council "assured a safe and sanitary workplace for other City officials and employees, including themselves." *Id.* at 11 (¶ 48). As the legal basis for this count, Bodie alleges that "said conduct" violated her "right to Equal Protection under the law, guaranteed by the Fourteenth Amendment of the United States Constitution." *Id.* at 12 (¶ 50).

---

[12] By order entered June 27, 1997, the court instructed Bodie to amend her complaint, requiring her to set out every separate claim in separately numbered paragraphs and specifying each defendant against whom that claim is made. According to that order, Bodie could only include one claim in each separately numbered count. Despite the court's admonishment in this regard, Bodie introduces each count of her amended complaint by "incorporating" all preceding allegations "by reference," and Bodie concludes each count of her amended complaint with a generalized ad damnum clause. The Eleventh Circuit has condemned such "shotgun pleading" as violative of Fed. R. Civ. P. 10. *Anderson v. District Board of Trustees of Central Fla. Community College*, 77 F.3d 364, 365-66 (11th Cir. 1996). When read in light of the court's order, notwithstanding Bodie's inartful use of legalese to introduce and conclude each count of her amended complaint, each count of Bodie's amended complaint clearly does state a single claim against a single defendant or a single group of defendants. Accordingly, the court will analyze each count of Bodie's amended complaint as stating a separate and distinct claim against each defendant or group of defendants.

6

Because Bodie alleges a federal constitutional violation against a governmental entity in this civil lawsuit, Bodie's claim must be made pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1979).[13] Therefore, § 1983 provides a civil remedy to parties deprived of their constitutional rights, privileges, and immunities by an official's abuse of his position. *Winicki v. Mallard*, 783 F.2d 1567, 1570 (11th Cir. 1986), *cert. denied*, 479 U.S. 815 (1986). In fact, § 1983 is the exclusive remedy for claims against a city official for alleged constitutional violations. *Thomas v. Shipka*, 818 F.2d 496, 503 (6th Cir. 1987), *vacated on other grounds,* 872 F.2d 772 (1989).

### 1. *Statute of Limitations.*

Because Bodie's claim in Count One must be brought pursuant to § 1983, her claim is subject to the statute of limitations applicable to that statute. Although § 1983 does not contain an explicit time limitation, the Supreme Court held in *Wilson v. Garcia* that federal

---

[13] Congress amended § 1983 on October 19, 1996, to insert the following language at the end of the quoted passage:

> . . . except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983, *as amended*, Oct. 19, 1996, P.L. 104-317, Title III, § 309(c), 110 Stat. 3853. This amendment was not in effect at the time Bodie filed her lawsuit, and Congress did not make the 1996 amendment retroactive. Furthermore, this amendment is not relevant to Bodie's claim.

7

courts should look to the applicable state statute of limitations for personal injury claims. 471 U.S. 261, 270-80 (1985). Unfortunately, this did not completely resolve the issue for states (like Alabama) that had different statutes of limitations for different types of personal injury. *See, e.g.,* Ala. Code § 6-2-34(1) (1975) (six-year statute of limitations for "trespass to person or liberty, such as false imprisonment or assault and battery"); *Id.* at § 6-2-38 (two-year statute of limitations for other personal injury). Shortly after the Supreme Court decided *Wilson,* the Eleventh Circuit chose Alabama's six-year statute of limitations for "trespass to person or liberty" as the appropriate statute of limitations for § 1983 actions. *Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1256 (11th Cir. 1985) ("*Jones I*"), *overruled,* 876 F.2d 1480, 1484 (11th Cir. 1989).

In 1989, however, the Supreme Court revisited the issue it left open in *Wilson,* resolving the dilemma of states with different statutes of limitations for different types of personal injury. *Owens v. Okure,* 488 U.S. 235 (1989). Implicitly overruling the Eleventh Circuit's decision in *Jones I,* the Court held that, in states with multiple limitations periods for personal injury actions, the proper period for § 1983 actions is the state's general or residual personal injury statute of limitations. *Id.* at 236, 241 n.5. In Alabama, the general or residual personal injury limitation is two years. Ala. Code § 6-2-38(1) (1975); *Ex parte Grubbs,* 542 So. 2d 927 (Ala. 1989); *see also Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1484 (11th Cir. 1989) ("*Jones II*") (applying *Owens v. Okure* to Alabama law); *Andalusia City Bd. of Educ. v. Andress,* 916 F. Supp. 1179 (M.D. Ala. 1996) (two-year personal injury statute of limitations applies to § 1983 claims in Alabama). Therefore, on January 10, 1989, the

8

Supreme Court's decision in *Owens* definitively resolved the question of what limitations period should apply to § 1983 claims in Alabama.

In this case, Bodie filed her complaint on January 10, 1992. Under strict application of the rule in *Owens*, all of Bodie's § 1983 claims that arise from events that occurred before January 10, 1990, are time barred. However, Bodie alleges events involving City officials that occurred as early as April 16, 1987, approximately one year and nine months before the *Owens* decision. *Complaint* at ¶ 24. Whether the two-year time bar applies to claims that arose from those events alleged to have occurred before the *Owens* decision depends upon whether the *Owens* decision applies retroactively to those events.

The general rule is that cases are decided in accordance with the law existing at the time of the decision. *Jones II*, 876 F.2d at 1483 (citing *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 486 n.16 (1981)). That general rule includes application of rules established by judicial decisions during the pendency of the case. *Id.* (citing *Goodman v. Lukens Steele Co.*, 482 U.S. 656, 662 (1987), which applied the *Wilson v. Garcia* two-year time limitation on § 1981 claims retroactively). In this case, *Owens* was decided and the two-year limitation on § 1983 claims was clearly established prior to the pendency of this action. Therefore, under the general rule, not only are Bodie's § 1983 claims arising from events that occurred after the *Owens* decision and before January 10, 1990, time barred, but *all* of Bodie's § 1983 claims that arise from events that occurred before January 10, 1990, are time barred.

In *Chevron Oil Co. v. Huson*, the Supreme Court established an exception to the rule that courts should apply the statute of limitations in existence at the time of the decision. 404

9

U.S. 97 (1971). The Court established a three-part test to determine when a court should deny retroactive effect to a judicial decision. Under *Chevron Oil*, courts must consider the following:

> (1) whether the decision establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retroactive application will enhance or inhibit the purpose behind the rule established by the new decision; and (3) whether it would be inequitable to apply the decision retroactively.

*Id.* at 106-07.

In this case, none of the three *Chevron Oil* factors argue against application of the general rule requiring retroactive application of the *Owens* decision. First, under *Chevron Oil*, the court must consider whether *Owens* established a new rule "on which litigants may have relied." *Id.* Bodie can not contend that she relied upon a longer time limitation after *Owens*, particularly considering that she waited three years once *Owens* was decided to file this action. In fact, as noted above, Bodie had over three months after the Supreme Court handed down *Owens* before the two-year limitation ran on any claims arising out of the earliest events involving City officials that Bodie alleges in this action.

In *Kimbrough v. Bowan Transportation, Inc.*, the Eleventh Circuit considered the first factor of the *Chevron Oil* test and refused to apply *the Owens* two-year time limitation retroactively. 920 F.2d 1578 (11th Cir. 1991), *vacated on other grounds*, 929 F.2d 599 (11th Cir. 1991). *Kimbrough*, however, is vastly different from the case at bar—in *Kimbrough*, the plaintiff filed his action after *Jones I* established that a six-year time limitation applied to § 1983 actions but before *Owens* was decided. Therefore, according to the Eleventh Circuit

10

in *Kimbrough*, the plaintiff in *Kimbrough* might reasonably have relied upon the established rule of law from *Jones I*, and "to apply [*Owens*] retroactively under these circumstances would work a substantial inequity." *Kimbrough*, 920 F.2d at 1583. Unlike the plaintiff in *Kimbrough*, Bodie could not have reasonably relied upon the established law from *Jones I* because the Supreme Court established a new rule of law effectively overruling *Jones I* three years before Bodie filed this action. Therefore, the first factor of the *Chevron Oil* test does not compel this court to abrogate the general rule requiring application of the *Owens* decision retroactively in this case.

Second, retroactive application of *Owens* in this case will enhance, rather than inhibit, the purpose behind the rule enunciated in *Owens*. The purpose of the rule in *Owens* was to promote "predictability and uniformity." *Kimbrough v. Bowman Transportation Co.*, 712 F. Supp. 883, 886 (N.D. Ala. 1989), *aff'd*, 920 F.2d 1578 (11th Cir. 1991), *vacated on other grounds*, 929 F.2d 599 (11th Cir. 1991). The *Owens* Court sought to clear up the "conflict, confusion and unpredictability" of prior decisions. *Owens*, 488 U.S. at 240. In this case, a reversion to the uncertainty that preceded *Owens* is inconsistent with the purpose of the rule. *See Jones*, 876 F.2d at 1484. Therefore, the second factor of the *Chevron Oil* test does not compel this court to abrogate the general rule requiring application of the *Owens* decision retroactively in this case.

Third, equitable considerations do not disfavor retroactive application of *Owens* to this case. As a general matter, shortening the limitations period may deny access to the federal courts for those injured parties who relied on the longer period. In that instance, application of the shorter period may be inequitable. However, this is not a case in which

11

retroactive application of the *Owens* two-year limitations period eliminated Bodie's access to federal court on claims arising from events that preceded the *Owens* decision. When the Supreme Court decided *Owens*, Bodie still had over three months to file a claim arising from the earliest event of which she now complains. *See Lufkin v. McCallum*, 752 F. Supp. 421, 423 (N.D. Ala. 1990) (retroactive application of *Owens* not inequitable where plaintiff had a five-month period within which to file a complaint before losing his § 1983 claim), *aff'd*, 956 F.2d 1104 (1992). Furthermore, failure to apply a two-year limitations period, which was established three years before Bodie actually filed this action, is inequitable to defendants in this action. *See Foster v. Board of School Comm'r of Mobile County*, 872 F.2d 1563, 1567 (11th Cir. 1989) (refusing to retroactively apply *Jones I* to expand the § 1983 limitations period to six years). Therefore, the third factor of the *Chevron Oil* test does not compel this court to abrogate the general rule requiring application of the *Owens* decision retroactively in this case.

In summary, Bodie's claims arising from events occurring before January 10, 1990—i.e., more than two years before she filed her complaint—are time barred. Events occurring after the *Owens* decision and before January 10, 1990, are time barred because *Owens* established that a two-year limitations period applies to § 1983 actions in Alabama. Events occurring before the *Owens* decision are time barred because, for the reasons stated above, the court sees no reason to depart from the general rule and apply *Owens* retroactively to this case.

In this lawsuit, the only event of which Bodie complains that occurred after January 10, 1990, is the vote of the City Council on January 11, 1990, which resulted in Bodie's

12

transfer to the City jail. However, in Count One of her complaint, Bodie does not allege that she was wronged by the January 11, 1990, vote of the City Council. Rather, in Count One, Bodie alleges that the City knew about the "unsafe and unsanitary working condition" at the Clinic, and that the City chose to leave her at the Clinic under that condition "until they made their final decision regarding [her] grievance on January 11, 1990." According to her allegations, Bodie obtained relief from the condition of which she complains in Count One on January 11, 1989, the day on which the applicable limitations period ran. Therefore, all of the events that give rise to Bodie's claims in Count One fall outside the applicable two-year limitations period.

Accordingly, Bodie's claims in Count One of her amended complaint are due to be dismissed because they are barred by the two-year period of limitations applicable in Alabama to § 1983 claims.

### 2. *Failure to State a Claim Upon Which Relief Can Be Granted.*

In addition to being time barred, Bodie's claims in Count One fail to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the claimant can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Draughton v. City of Oldsmar*, 767 F. Supp. 1144, 1145 (11th Cir. 1991). The court, when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, is required to view the complaint in a light most favorable to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Draughton*, 767 F.2d at 1145. In Count One, Bodie alleges that the City violated her "liberty interest in safe working conditions," which she claims is protected by

13

the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. This claim fails because under no set of facts does Bodie state a claim that is protected by the Equal Protection Clause, nor does she state a claim protected by any other portion of the U.S. Constitution.[14]

### a.      Equal Protection.

First, Bodie does not state a claim that is cognizable under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is essentially a mandate that all persons similarly situated be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Thus, to state an equal protection claim, a plaintiff must allege that he was treated differently from other similarly situated individuals. *City of Clebourne v. Clebourne Living Ctr.*, 473 U.S. 432, 439 (1985). Bodie does allege that "[t]he City Council made a deliberate choice to leave [her] in a unsafe [sic] and unsanitary City Clinic workplace at the same time they assured a safe and sanitary workplace for other City officials and employees, including themselves." *Complaint* at 11 (¶ 48). But more is required for Bodie to state a cognizable equal protection claim.

Although the Fourteenth Amendment empowers Congress to enforce its mandate, the courts themselves have devised standards, absent any controlling congressional direction, by which to determine the validity of state legislation or other official action that

---

[14]Although the only stated basis for Count One is "Plaintiff's right to Equal Protection under the law, guaranteed by the Fourteenth Amendment of the United States Constitution," *Complaint* at 12 (¶ 50), in order to extend the full benefit of any doubt to this *pro se* plaintiff, the court will analyze her claims under any other conceivable constitutional basis as well.

is challenged under the Equal Protection Clause. *City of Clebourne v. Clebourne Living Ctr.*, 473 U.S. 432, 439-40 (1985). The general rule is that legislation is presumed to be valid if the classification drawn by the legislative action is rationally related to a legitimate state interest. *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981); *United States Retirement Board v. Fritz*, 449 U.S. 166, 174-75 (1980); *Vance v. Bradley*, 440 U.S. 93, 97 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). When social or economic legislation is at issue, the Equal Protection Clause allows wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process. *Fritz*, 449 U.S. at 174; *Dukes*, 427 U.S. at 303; *City of Clebourne*, 473 U.S. at 440. On the other hand, any legislation which classifies individuals by race, alienage, national origin, or gender, or any legislation that impinges upon a recognized fundamental right protected by the Constitution[15] is due a heightened form of scrutiny. *City of Clebourne*, 473 U.S. at 440.

---

[15] Fundamental rights, which invoke heightened judicial scrutiny of a legislative restriction upon them, include the following: (1) privacy rights of marriage and reproduction; *see, e.g., Skinner v. Oklahoma*, 316 U.S. 535 (1942) (sterilization of prisoners); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (use of contraception by married persons); *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (distribution of contraceptives to unmarried persons); *Loving v. Virginia*, 388 U.S. 1 (1967) (interracial marriage); *Boddie v. Connecticut*, 401 U.S. 371 (1971) (payment of court costs to obtain divorce); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); (2) the right to vote and seek election; *see, e.g., Reynolds v. Simms*, 377 U.S. 533 (1964) (one person, one vote); *Kramer v. Union Free School District*, 395 U.S. 621 (1969) (property ownership requirement to vote); *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966) (poll tax); *Carrington v. Rash*, 380 U.S. 89 (1965) (residency requirement to vote); *Bullock v. Carter*, 405 U.S. 134 (1972) (wealth restriction on candidates); and (3) the right to travel; *see, e.g., Shapiro v. Thompson*, 394 U.S. 618 (1969) (residency requirement for welfare benefits); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (voter registration residency requirement); *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974) (residency requirement for non-emergency hospitalization).

Other fundamental rights invoking heightened judicial scrutiny of a legislative restriction upon them include those incorporated from the Bill of Rights and applied against the states through the Fourteenth Amendment as follows: (1) the free exercise of religion; *Palko v. Connecticut*, 302 U.S. 319, 323-26 (1937); (2) freedom of speech; *Id.*; (3) freedom of press; *Id.*; (4) freedom of assembly; *Id.*; (5) the right to petition the government; *Id.*; (6) Fifth Amendment due process; *Id.*; (7) the right to compensation for takings; *Id.*; (8) Sixth Amendment charge and subpoena rights; *Id.*; (9) the establishment of religion; *Everson v. Board of Educ.*, 330 U.S. 1 (1947); (10) the right to a public trial; *In re Oliver*, 333 U.S. 257 (1948); (11) Fourth Amendment rights; *Mapp v. Ohio*, 367 U.S. 643 (1961); (12) the Eighth Amendment prohibition on cruel and unusual punishment; *Robinson v. California*, 370 U.S. 660 (1962); (13) the Sixth Amendment right to counsel; *Gideon v. Wainwright*, 372 U.S. 335 (1963); (14) the Fifth Amendment right against self-incrimination; *Malloy v. Hogan*, 378 U.S. 1 (1964); (15) the Sixth

15

Legislation that impinges upon the area of government employment is not due any heightened form of scrutiny; legislative judgments concerning the terms of public employment are analyzed in the same way as other forms of economic and social welfare legislation. *See, e.g., Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) (applying rational basis analysis to uphold requirement for mandatory retirement at age fifty for state police); *Vance v. Bradley*, 440 U.S. 93 (1979) (applying rational basis analysis to uphold requirement for mandatory retirement at age sixty by foreign service employees); *Kelly v. Johnson*, 425 U.S. 238 (1976) (applying rational basis analysis to regulation of hair length of male police officers); *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645 (1976) (applying rational basis analysis to residency requirement for city employees).

In *Harrah Independent School District v. Martin*, the Supreme Court unanimously rejected the equal protection claim of a tenured school teacher fired for failure to comply with the school board's continuing education requirement, which applied only to teachers with bachelor's degrees. 440 U.S. 194 (1979) (per curiam). The Court reversed the Tenth Circuit Court of Appeals, which had found the board's action "arbitrary and capricious." *Id.* at 201. The Court held that, even if the underlying decision was arbitrary, "the only inquiry is whether the State's classification is 'rationally related to the State's objective.'" *Id.* at 199

---

Amendment confrontation clause; *Pointer v. Texas*, 380 U.S. 400 (1965); (16) the right to an impartial jury; *Parker v. Gladden*, 385 U.S. 363 (1966); (17) the right to a speedy trial; *Klopfer v. North Carolina*, 386 U.S. 213 (1967); (18) the right to compulsory process for obtaining witnesses; *Washington v. Texas*, 388 U.S. 14 (1967); (19) the right to a jury trial in a criminal case; *Duncan v. Louisiana*, 391 U.S. 145 (1968); (20) the Fifth Amendment prohibition of double jeopardy; *Benton v. Maryland*, 395 U.S. 784 (1969); (21) the Eighth Amendment prohibition on excessive bail; *Schilb v. Kuebel*, 404 U.S. 357 (1971). The Second, Third, and Seventh Amendments remain unincorporated, as does the Fifth Amendment provision requiring grand jury indictments in criminal cases. *McKinney v. Pate*, 985 F.2d 1502, 1510 (11th Cir. 1993) (Tjoflat, C.J., concurring), *overruled on other grounds*, 20 F.3d 1550 (11th Cir. 1994).

(quoting *Murgia*, 427 U.S. at 315). Continuing, the Court said, "The most cursory examination of the agreed facts demonstrates the Board's action met this test." *Id.*

This court must give great deference to the City Council because lawmakers are presumed to have acted constitutionally "despite the fact that, in practice, their laws result in some inequality." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961)). In addition to this threshold presumption, the Supreme Court has clearly held that in cases involving economic classifications such as this one, the rational basis test is extremely lenient. Review of legislative acts must be "a paradigm of judicial restraint." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). Furthermore, according to the Supreme Court:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Beach Communications*, 508 U.S. at 313 (citations omitted). The Eleventh Circuit has held that "[a] searching inquiry into the validity of legislative judgments concerning economic regulation is not required. . . . The task is to determine if 'any set of facts may be reasonably conceived of to justify' the legislation." *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1241 (11th Cir. 1991) (citations omitted). Because legislatures are not required to articulate reasons for the enactment of a statute,[16] "it is entirely irrelevant for

---

[16] "[A] legislature that creates these categories need not 'actually articulate' at any time the purpose or rationale supporting its classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quoting *Nordlinger*, 505 U.S. at 15).

constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communications*, 508 U.S. at 315. Therefore, in evaluating the rational basis for a statute, it is entirely permissible to rely on rationales that were not contemplated by the legislature at the time of the statute's passage.[17] *Cash Inn*, 938 F.2d at 1242. "In other words, a legislative choice is not subject to court-room fact finding and may be based on rational speculation unsupported by evidence or empirical data." *Beech Communications*, 508 U.S. at 315. With these legal principles in mind, this court considers the merits of Bodie's amended complaint.

Bodie alleges that the City treated her differently from other City personnel by affording her a less desirable work environment. Bodie alleges that in 1988, while she worked at the Clinic, the City conducted a twelve-month study of the Clinic and that during that time conditions at the Clinic deteriorated. She states that, in November of 1988, when she voiced her concerns to Hall about conditions at the Clinic, he responded by telling her that he had initiated a study "to determine alternate operational approaches which may alleviate [her] concerns for safety." *Complaint* at ¶ 38. Bodie states that members of the City Council knew about the allegedly unsatisfactory conditions at the Clinic as early as October of 1988. She states that City Councilmen visited the facility and requested that Bodie suggest modifications to the Clinic operations. In January of 1989, the City Council allegedly heard a proposal for Huntsville Hospital to assume management of the Clinic. Then, according to Bodie, on January 4, 1990, the City Council entertained a second proposal for

---

[17] For example, in *Beach Communications*, one of the rationales relied on by the Court was proffered not by the legislature in support of the challenged statute, but rather by a circuit judge, concurring in the circuit court's opinion. 508 U.S. at 317.

18

Huntsville Hospital to assume management of the Clinic. Finally, Bodie states that, on January 11, 1990, the City acted to close the Clinic, which resulted in Bodie's transfer to another location.

Based upon the factual allegations of Bodie's own complaint, the City Council had an ample rational basis for its actions. First, the City has an interest in cost-effective and efficient operation of its health care facilities, just like the school board in *Martin* had an interest in providing its students with a quality education. Although this interest may have conflicted with Bodie's interest in better working conditions at the Clinic, the City's interest is nevertheless a legitimate one. Next, the action taken by the City Council was rationally related to its legitimate interest in a cost-effective and efficient health care facility. According to Bodie, the City Council studied several alternatives, took advice from Bodie and others on how to improve the Clinic and ultimately chose to contract out for the services provided by the Clinic. The City was certainly justified in continuing to operate the Clinic while it considered its options. This court cannot judge the wisdom, fairness, or logic of the City Council's legislative choices. Therefore, Bodie fails to state a claim against the City upon which relief can be granted under the Equal Protection Clause.

Bodie also fails to state an equal protection claim because she does not allege an intent to discriminate by the City. As noted by the Eleventh Circuit in *E&T Realty v. Strickland*:

> Equal protection claims can be divided into three broad categories. The first and most common type is a claim that a statute discriminates on its face. In such a case, a plaintiff can prevail by showing that there is no rational relationship between the statutory classification and a legitimate state goal. . . The second type of equal protection claim is that neutral application

19

of a facially neutral statute has a disparate impact. In such a case, a plaintiff must prove purposeful discrimination. The third type of claim is that defendants are unequally administering a facially neutral statute.

*Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987) (internal citations omitted).

Bodie alleges actions by the City that fall into the second category of equal protection claims: "neutral application of facially neutral legislation [that] has a disparate impact." *Id.*; *see also Baker v. City of Alexander City*, 973 F. Supp. 1370 (M.D. Ala. 1997). First, the alleged actions by the City were facially neutral. Bodie did not allege that the City Council directed its decision to continue to operate the Clinic at her. Rather, according to Bodie's allegations in Count One, the actions of the City Council were directed at correcting the alleged problems at the Clinic.[18] Therefore, according to the amended complaint, if the City Council's decision did treat Bodie differently from other City personnel, that disparate treatment was an incidental effect of actions by the City Council that were facially neutral toward her. Also, Bodie did not allege that the City administered the facially neutral legislation or policy in an unequal fashion. According to the amended complaint, the City Council made its decision to study conditions of the Clinic and to consider its alternatives before taking further action, and that facially neutral decision was applied to Bodie in a nondiscriminatory manner. As such, the alleged discrimination was the result of a neutral application of a facially neutral policy, which also happened to have an adverse effect on Bodie.

---

[18] This is different from the allegations in Count Two. In Count Two, Bodie alleges that the City's decision to contract out the services provided by the Clinic was in retaliation for her complaints about conditions at the Clinic. *See infra* Section III.B.

Because Bodie complains of neutral application of facially neutral decisions by the City Council, Bodie must allege, and ultimately must prove, an element of "intentional or purposeful discrimination." *Strickland*, 830 F.2d at 1112 n.5. (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979); *Washington v. Davis*, 426 U.S. 229 (1976)). "'[D]iscriminatory purpose' implies more than intent as volition or intent as awareness of consequences; it implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 257 (internal citations omitted). Bodie does not allege that the City Council maintained the allegedly unsatisfactory working conditions at the Clinic "because" she worked there. Bodie's allegations that the City was aware of the adverse consequences of its actions are insufficient to allege purposeful discrimination. Therefore, Bodie has failed to allege intentional discrimination in the application of a facially neutral decision by the City.

Consequently, Bodie has failed to state a claim for which relief can be granted against the City under the Equal Protection Clause for two reasons: (1) according to Bodie's allegations, the actions of the City, which she claims were adverse to her, were rationally related to the City's legitimate interest in cost-effective and efficient operation of the Clinic; and (2) Bodie does not allege, and her factual allegations do not support an inference of, intentional or purposeful discrimination by the City. Therefore, any equal protection claim against the City in Count One is due to be dismissed.

21

### b. Substantive Due Process.

Additionally, Bodie does not state a claim cognizable under the Due Process Clause
of the Fourteenth Amendment. As stated above, Bodie alleges in Count One that the City
violated her "liberty interest in safe working conditions." *Complaint* at 11 (¶ 48). Under the
Due Process Clause, States may not "deprive any person of life, liberty, or property, without
due process of law." U.S. CONST. amend. XIV, § 1. This provision has two quite distinct
meanings: (1) "substantive" due process may protect certain fundamental rights and void
arbitrary limitations on individual freedom of action;[18] and (2) "procedural" due process
guarantees that each individual is afforded a fair procedure to determine the basis for and
legality of any use of governmental power against the individual that involves deprivation
of life, liberty, or property. *See Planned Parenthood v. Casey*, 505 U.S. 833, 846-47, 112 S.
Ct. 2791, 2804, 120 L. Ed. 2d 674 (1992) ( "Although a literal reading of the Clause might
suggest that it governs only the procedures by which a State may deprive persons of liberty,
for at least 105 years . . . the Clause has been understood to contain a substantive
component as well . . . ."). The court will analyze Count One of Bodie's amended complaint
with respect to both aspects of due process, beginning with substantive due process.

---

[18] An additional substantive interpretation is that the clause selectively incorporates provisions of the Bill
of Rights, and protects these rights against infringement by state and local governments. *See Daniels v. Williams*,
474 U.S. 327, 337 (1986) (Stevens, J., concurring in the judgment) (noting that "the Due Process Clause of the
Fourteenth Amendment . . . is the source of three different kinds of constitutional protection": procedural due
process, substantive due process, and incorporation); *Burch v. Apalachee Community Mental Health Servs., Inc.*,
840 F.2d 797, 800 (11th Cir. 1988) (same), *aff'd sub nom., Zinermon v. Burch*, 494 U.S. 113 (1990). Justice Cardozo's
famous opinion in *Palko v. Connecticut*, 302 U.S. 319 (1937), recognized certain rights as "implicit in the concept
of ordered liberty," and thus protected by the Fourteenth Amendment against state infringement. *Id.* at 325-26. The
selective incorporation of most of the Bill of Rights has been a progressive recognition of those liberties as
fundamental. *See supra* note 13.

Although substantive due process is "a difficult concept to define," it is violated "*only* when the government engages in actions which 'offend those cannons of decency and fairness which express the notions of justice.'" *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir. 1992) (quoting *Faucher v. Rodziewicz*, 891 F.2d 864, 871 (11th Cir. 1990)). Only when such a government action is a totally arbitrary deprivation of liberty will it violate the substantive due process guarantee. *See, e.g., Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525 (1949) (upholding a state's "right-to-work" law); *Williamson v. Lee Optical Co.*, 348 U.S. 483 (1955) (upholding state statute that restricted opticians' ability to fit or duplicate eyeglasses); *Railway Express Agency v. New York*, 336 U.S. 106 (1949) (upholding a city ordinance that prevented owners of delivery vehicles from placing certain advertisements on the outside of their vehicles).

Courts reviewing substantive due process claims against a government entity must begin with "the presumption that the administration of government programs is based on a rational decision-making process that takes account of competing social, political, and economic forces." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992). "Decisions concerning the allocation of resources to individual programs, . . . and to particular aspects of those programs, . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Id.* The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). Justice Black's opinion in *Ferguson v. Skrupa* states the Supreme Court's position on application of substantive due process analysis to economic matters; he wrote, "[W]e

23

refuse to sit as a 'superlegislature to weigh the wisdom of legislation' . . . . Whether the legislature takes for its textbook Adam Smith, Herbert Spencer, Lord Keynes or some other is no concern of ours." 372 U.S. 726, 731-32 (1963) (upholding state law that prohibited anyone from conducting the business of debt adjustment unless incident to the practice of law).

Consequently, the Due Process Clause does not protect an interest in safe working conditions. The leading case in this regard is *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). *See also McKinney v. Pate*, 985 F.2d 1502, 1510 (11th Cir. 1993) (Tjoflat, C.J., concurring), *overruled on other grounds*, 20 F.3d 1550 (11th Cir. 1994). In *Collins*, the widow of a city employee sued the city under § 1983 alleging that the city's failure to train or to warn its employees about the dangers of entering a manhole to unstop a sewer line resulted in her husband's death. *Collins*, 503 U.S. at 117-18. She alleged that a prior incident had given the city notice of the dangerous condition that killed her husband. *Id.* at 118 n.1. The district court dismissed her complaint for failure to state a claim, and the Fifth Circuit affirmed. *Id.* at 118. On a writ of certiorari, the Supreme Court agreed with the lower courts that she lacked a constitutional basis for her claim because the Due Process Clause does not impose an independent substantive duty upon a municipality to provide certain levels of safety and security in the workplace.[20] *Id.* at 126. The Court explained that the Due

---

[20]The Court carefully distinguished several former decisions, which allowed a constitutional claim advanced by plaintiffs who had already been deprived of their liberty. *Collins*, 503 U.S. at 127. Bodie, like the plaintiff in *Collins*, can not claim that the City deprived her of her liberty when it placed her in the Clinic; this case is therefore equally different from those cases distinguished by the Court in *Collins*.

24

Process Clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security. *Id.* at 126-27.

The Court in *Collins* also addressed a second possible substantive due process theory. *Id.* at 126. The Court considered whether the city's "deliberate indifference" to its employee's safety was an arbitrary government action that "shocks the conscience" of federal judges. *Id.*; *see United States v. Salerno*, 481 U.S. 739 (1987) (quoting *Rochin v. California*, 342 U.S. 165 (1952), and *Palko v. Connecticut*, 302 U.S. 319 (1937)); *McKinney*, 985 F.2d at 1510. The Court, however, was no more persuaded that the city's alleged failure to warn or failure to train its employees was "an omission that can be properly characterized as arbitrary, or conscience shocking, in the constitutional sense," than it was persuaded that the constitution imposes a duty upon the city to provide safe working conditions. *Collins*, 503 U.S. at 128.

Since Bodie's allegations in Count One are virtually indistinguishable from those in *Collins*, Bodie's claims in Count One are likewise not cognizable under a substantive due process analysis. Bodie, like the plaintiff in *Collins*, claims that the City violated her alleged right to a safe work environment, and Bodie, like the plaintiff in *Collins*, has no such right under the Due Process Clause. The only difference in the allegations in *Collins* is that the plaintiff in *Collins* alleged that her husband lost his life because of the unsafe working conditions provided by the city. Bodie, on the other hand, does not allege any actual damages as a result of the alleged unsafe conditions in her workplace. Compared to the claims in *Collins*, Bodie's allegations are even less able to "shock the conscience" of the court.

Consequently, Bodie has failed to state a claim for which relief can be granted against the City based on a substantive due process theory for two reasons: (1) Bodie does not have a substantive due process right to safe working conditions in her workplace; and (2) Bodie does not allege, and her factual allegations do not support an inference of, "deliberate indifference" on the part of the City to Bodie's safety or arbitrary government action that "shocks the conscience" of this court. Therefore, any substantive due process claim against the City in Count One is due to be dismissed.

### c.    Procedural Due Process.

Bodie is similarly unable to state a claim for violation of her rights to procedural due process. In addition to substantive due process rights, the Due Process Clause guarantees the right to a fair procedure whenever the power of the government is used to deprive an individual of "life, liberty or property." Bodie alleges that "[p]ursuant to the plain meaning of the language in [The Employee Handbook, she] had a liberty interest in safe working conditions." *Complaint* at 11 (¶ 48).

The Fourteenth Amendment does not create a substantive right to safe working conditions, *see supra* Section III.A.2.b, nor does it create a substantive right to continued employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (due process clause of the Fourteenth Amendment safeguards only those property interests defined by independent sources). However, given an independent source for the claimed property interest, the right to a fair procedure in order to terminate that interest becomes vested. *See Perry v. Sinderman*, 408 U.S. 593 (1972) ("de facto" tenure program entitled college professor to hearing prior to final decision not to renew his contract).

In Count One, Bodie alleges an independent source for her interest in a safe workplace—she claims her employee handbook obligates the City to provide safe working conditions. Even though a property interest in public employment protected by the Fourteenth Amendment can be created by contract, the sufficiency of the claim of entitlement must be decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). In Alabama, an employee handbook can create a contractual obligation between an employer and an employee. The Alabama Supreme Court, in *Hoffman-LaRoche, Inc. v. Campbell*, held that "a policy contained in an employee manual issued to an employee [can] become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so." 512 So. 2d 725, 733 (Ala. 1987). In *Cambell*, the court found the evidence sufficient to establish that the defendant-employer breached a contract embodied in the plaintiff's employee manual when it discharged the plaintiff. *Id.* at 738; *but see Boyett v. Troy State University at Montgomery*, 971 F. Supp. 1403, 1410-14 (M.D. Ala. 1997) (university's faculty handbook did not create constitutionally protected interest in reappointment), *aff'd,* 142 F.3d 1284 (11th Cir. 1998). Likewise, in *Davis v. Marshall*, the Alabama Supreme Court reversed a summary judgment against a plaintiff where the plaintiff asserted contract rights "to pay for holidays, vacations, and overtime" that were allegedly created by an employee handbook. 404 So. 2d 642, 644-45 (Ala. 1981); *see also United Steel Workers of America v. University of Alabama*, 599 F.2d 56, 60 (5th Cir. 1979) (an employee's interest in a benefit may create a property interest for due process purposes).

27

Alabama courts have not considered whether an employee handbook could create a right to a safe work environment. Although such a proposition seems unlikely, this court need not decide whether Alabama would recognize a contractual obligation for an employer to provide a safe work environment created by an employee handbook, or whether the particular handbook alleged in this case would be sufficient to create such a right. Instead, for purposes of this procedural due process analysis on the defendants' motions to dismiss, the court will assume that, under the laws of the State of Alabama, Bodie does allege a contract right to a safe workplace created by her employee handbook.[21]

_____

[21] Bodie describes her interest in a safe workplace as a "liberty interest." *Complaint* at 11 (¶ 48). The Supreme Court discussed how to define a liberty interest in *Meyer v. Nebraska*, as follows:

> While this court has not attempted to define with exactness the liberty . . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Meyer*, 262 U.S. 390, 399 (1923). Later, in the landmark case of *Board of Regents v. Roth*, the Court considered what liberty interest might attach to an employment relationship. 408 U.S. 564, 573 (1972). In *Roth*, the Court recognized that an employer may infringe upon an employee's liberty interest when the employee's "'good name, reputation, honor, or integrity' is at stake." *Id.*; *see also Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993); *Boyett v. Troy State Univ. at Montgomery*, 971 F. Supp. 1403, 1413 (M.D. Ala. 1997). The *Roth* court also considered what constitutes a "property interest" as follows:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms. Thus, the Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, and college professors and staff members dismissed during the terms of their contracts, have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle 'proscribing summary dismissal from public employment without hearing or inquiry required by due process' also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment.

*Roth*, 408 U.S. at 576 (footnote and citations omitted).

28

With that assumption, the issue becomes what process is due. As a general rule, the Constitution requires that the state provide fair procedures and an impartial decision-maker before infringing upon a person's interest in life, liberty or property. *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994). Although no precedent in this circuit has addressed what, if any, procedure is due to a public employee before deprivation of an alleged interest in safe working conditions, the Supreme Court, in *Cleveland Board of Education v. Loudermill*, explained that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate the employee.[22] 470 U.S. 532, 546 (1985).

In this case, the City extended to Bodie at least the same level of procedural safeguards that were required of the state in *Loudermill*. Bodie states in her amended complaint that she had opportunities to *informally* voice her concerns about conditions at the Clinic to the relevant decisionmakers. According to Bodie, there were "numerous and frequent information-gathering visits" to the Clinic by Hospital management personnel and independent "health care consultants" from Atlanta. *Complaint* at ¶ 32(b). Bodie reports fact-finding visits to the Clinic in October of 1988 by Jane Maybry, a non-defendant member of the City Council, and in January of 1989 by defendant Wall. *Id.* at ¶¶ 35, 42(c). Finally,

---

In this case, like in *Roth*, Bodie does not allege a reputational interest, but rather more of an entitlement to a certain type of work environment. She alleges the Employee Handbook is the source of her entitlement. Therefore, in this case, what Bodie claims is a "property interest" for the purpose of due process analysis.

[22]The two employees in *Loudermill* had a statutory "property right in continued employment and could only be terminated for 'misfeasance, malfeasance, or nonfeasance in office.'" *Loudermill*, 470 U.S. at 539.

Bodie claims that on January 20, 1989, defendant Kaufmann, allegedly President of the City Council, "personally observed the City Clinic and requested [that Bodie] suggest modifications necessary to meet minimum basic requirements of the City Clinic." *Id.* at ¶ 42(d).

Bodie also claims to have had opportunities to *formally* address her concerns with the City decisionmakers. According to Bodie, she participated in the study of the Clinic operations by preparing a "comprehensive report of the total operations" of the Clinic. *Id.* at ¶ 32(a). She states that, following an incident at the Clinic with an inmate from the City jail, she "follow[ed] the procedures set out in the Employee Handbook, [and] initiated a grievance by sending a written request to Hall, asking for prompt action to provide [her] with a safe work environment."[23] *Id.* at 36. After receiving a written response from Hall, Bodie alleges that she "appealed her grievance to the City Personnel Committee." *Id.* at ¶ 39. In response, according to Bodie, the City Personnel Committee recommended certain remedial measures. *Id.* Bodie states that she subsequently "appealed her grievance to the City Council and received written notice . . . that her grievance would be heard at the City Council meeting." *Id.* at 40. Finally, on January 19, 1989, Bodie allegedly had the opportunity to present her concerns about the work conditions at the Clinic to the City Council. *Id.* at ¶¶ 41(a), 42(b). It is clear—based upon the factual allegations in her complaint—that Bodie was afforded constitutionally sufficient notice and opportunity to be heard, both formally and informally, regarding her alleged deprivation of any property interest in safe working

---

[23] The handbook referred to here is presumably the same handbook by which Bodie claims a constitutionally protected interest in a safe work environment.

conditions. Therefore, Bodie does not state a procedural due process claim for deprivation of her interest in safe working conditions.

Even if the facts alleged in Bodie's amended complaint were sufficient to meet the constitutional requirements for deprivation of her interest in safe working conditions, Bodie would still be unable to state a procedural due process claim for deprivation of her interest in safe working conditions. In *Parratt v. Taylor*, the Supreme Court held that due process did not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property. 451 U.S. 527, 537 (1981); *accord Hudson v. Palmer*, 468 U.S. 517, 533 (1984). All that due process requires, the Court said, is a post-deprivation "means of redress for property deprivations satisfy[ing] the requirements of procedural due process." *Parratt*, 451 U.S. at 537.

As stated by the Eleventh Circuit in *McKinney v. Pate*, "the precedent established by *Parratt* is unambiguous;" even if Bodie suffered a procedural deprivation at the hands of a biased City Council, she has not suffered a violation of her procedural due process rights unless and until the State of Alabama refuses to make available a means to remedy the deprivation. 20 F.3d at 1563. Because any bias on the part of the City Council was not sanctioned by the state and was the product of the intentional acts of the City Councilmen, under *Parratt*, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation. *Id.*; *see also Narey v. Dean*, 32 F.3d 1521, 1526-28 (11th Cir. 1994); *Boatman v. Town of Oakland*, 76 F.3d 341, 346, n.13 (11th Cir. 1996).

31

The State of Alabama has available to City employees like Bodie procedures by which to address grievances related to their employment.[24] The Alabama Supreme Court, in *Evans v. City of Huntsville*, recognized that the state trial court properly utilized the common law writ of certiorari to review a decision of the City of Huntsville to discharge its employee. 580 So. 2d 1323, 1325 (Ala. 1991); *see also Personnel Bd. of Jefferson County v. Bailey*, 475 So. 2d 863, 867 (Ala. Civ. App. 1985). The *Evans* court further recognized that the trial court was responsible for reviewing that decision to ensure the due process rights of the complainant. *Evans*, 580 So. 2d at 1325; *see also Ex parte Greenberg*, 395 So. 2d 1000, 1002 (Ala. 1981). According to the court in *McKinney*, the process afforded by the state courts of Alabama is an adequate remedy.[25] 20 F.3d at 1563; *see also Wallace v. City of Montgomery*, 956 F. Supp. 965, 981 (M.D. Ala. 1996) (State of Alabama provides adequate post-deprivation remedies in the form of an appeal to the state circuit court and appellate courts).

In this case, like the plaintiff in *McKinney*, Bodie failed to take advantage of any state remedies, opting instead to pursue her claim in federal court. 20 F.3d at 1563. Under the rule of *McKinney*, Bodie cannot state a procedural due process claim so long as an adequate state remedy is available. *Id.*

---

[24] Significantly, Bodie, like the plaintiff in *McKinney*, did not allege in her amended complaint that the state procedures are inadequate. *McKinney*, 20 F.3d at 1563 n.18; *see also Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) ("The [plaintiffs] . . . failed to state a valid procedural due process claim because they [did] not allege . . . that Alabama law provided them with an inadequate post-deprivation remedy.").

[25] The Supreme Court, in *Parratt*, held that the state's remedial procedure need not provide all relief available under § 1983. *Parratt*, 451 U.S. at 544. As long as the remedy "could have fully compensated the [employee] for the property loss he suffered," then the remedy satisfies procedural due process. *Id.*

Consequently, in Count One, Bodie fails to state a claim for which relief can be granted for a violation of her procedural due process rights for three reasons: (1) according to her own factual allegations, Bodie was afforded notice and an adequate opportunity to be heard by the decisionmakers for the City; (2) Bodie does not allege, and her factual allegations do not support an inference of, bias toward Bodie on the part of the decisionmakers for the City; and (3) the State of Alabama has available to Bodie a procedure for redress of her grievances, which she has not pursued. Therefore, any procedural due process claim against the City in Count One is due to be dismissed.

### 3.   *Summary.*

After careful consideration of the allegations in Count One of the amended complaint, the court can divine no constitutional basis upon which Bodie could possibly state a cognizable claim. Bodie explicitly claims violation by the City of her rights under the First and Fourteenth Amendments in Count Two. In Count Three, Bodie attempts to state a claim under the Fourth Amendment. The court addresses any claims that she may have under those constitutional provisions in subsequent sections of this opinion.

Therefore, on defendants' motions to dismiss, viewing the amended complaint in a light most favorable to the non-movant, Count One of the amended complaint is void of any constitutional basis and thus fails to state a claim upon which relief can be granted. Furthermore, as discussed in Section III.A.1, *supra*, Bodie's claims in Count One are time barred by the statute of limitations applicable to § 1983 actions. Accordingly, Bodie's claims in Count One are due to be dismissed. The claims contained in Count One are frivolous.

**B.    Count Two.**

In Count Two of her amended complaint, Bodie alleges that the Employee Handbook, as adopted by the City Council, created for her "a property interest in her position as City Nurse." *Complaint* at 12 (¶¶ 53-54). She further alleges that the City Council made a "deliberate choice" to transfer her from her position as City Nurse to the position of Jail Nurse, "which on its face was a demotion." *Id.* at 12 (¶¶ 55-56). Bodie claims that this action by the City Council was in "retaliation for her pursuit of an administrative grievance." *Id.* at 13 (¶ 58). As the legal basis for this count, Bodie states that the City Council "disciplined [her] for pursuit of a grievance, in violation of [her] rights guaranteed by the First and Fourteenth Amendment to the United States Constitution." *Id.* at 13 (¶ 57).

### 1.    *Statute of Limitations.*

As discussed in Section III.A, *supra*, because Bodie alleges federal constitutional violations against a governmental entity in this civil lawsuit, Bodie's claim in Count Two must be made pursuant to § 1983. Applying the two-year limitations period for § 1983 and *Owens,* Bodie's claims arising from events occurring before January 10, 1990, are time barred. However, unlike Bodie's claim in Count One, Count Two alleges that the "deliberate choice" by the City Council to transfer her from her position as City Nurse to the position of Jail Nurse violated her constitutional rights. This decision, according to the amended complaint, occurred at the City Council meeting on January 11, 1990—which was within the two-year limitations period. *Complaint* at 10 (¶ 45). Accordingly, to the extent that Bodie

34

claims constitutional violations by the City arising from events at the City Council meeting on January 11, 1990, her claims are not time barred.[26]

### 2.   *Failure to State a Claim Upon Which Relief Can be Granted.*

The City argues that Bodie's claims in Count Two are due to be dismissed for failure to state a claim upon which relief can be granted. However, on a motion pursuant to Fed. R. Civ. P. 12(b)(6) such as this, the court must view the allegations in the complaint as true and determine beyond a reasonable doubt that Bodie can prove no set of facts that would entitle her to relief. *See* Section III.A.2, *supra*. Under this strict standard, Count Two of the amended complaint may not be dismissed for failure to state a claim upon which relief may be granted. Nevertheless, the following discussion demonstrates that Bodie's claims under Count Two are quite limited.[27]

#### a.   **First Amendment.**

Bodie states a claim cognizable under the First Amendment to the U.S. Constitution, as incorporated into the Fourteenth Amendment and applied to the states. *Fiske v. State of Kansas*, 274 U.S. 380 (1927). The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST.

---

[26]Nowhere in her amended complaint does Bodie allege any events that occurred after January 11, 1990.

[27]Although the only stated basis for Count Two is that the City Council "disciplined [Bodie] for pursuit of a grievance, in violation of [her] rights guaranteed by the First and Fourteenth Amendment to the United States Constitution," *Complaint* at 13 (¶ 57), in order to extend the full benefit of any doubt to this *pro se* plaintiff, just as it did as to Count One, the court will analyze her claims under any conceivable constitutional ground.

35

amend. I. Bodie alleges that the City Council "disciplined [her] for pursuit of a grievance," and that the City Council transferred her in "retaliation for her pursuit of an administrative grievance." Therefore, Bodie claims that the City punished her for exercising her right to free speech or for exercising her right to petition the council for redress of her grievance.[28]

A state may not demote or discharge a public employee in retaliation for engaging in protected speech. *Watkins v. Bowden*, 105 F.3d 1344, 1352 (11th Cir. 1997); *see also Childers Indep. Sch. Dist. of Bryan County, Oklahoma*, 676 F.2d 1338 (10th Cir. 1982); *Allaire v. Rogers*, 658 F.2d 1055, 1058 n.2 (5th Cir. 1981); *McGill v. Board of Education*, 602 F.2d 774, 780 (7th Cir. 1979); *Rosado v. Santiago*, 562 F.2d 114, 119 (1st Cir. 1977). A claim by a public employee that he was punished for exercising his right to freedom of speech requires the court to conduct a four-part inquiry. *Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993), *cert. denied*, 512 U.S. 1221 (1994)); *see also Boyett v. Troy State University at Montgomery*, 971 F. Supp. 103, 1415 (M.D. Ala. 1997). First, the court must determine whether the alleged speech is "fairly characterized" as a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983); *see also Grigley v. City of Atlanta*, 136 F.3d 752 (11th Cir. 1998) (applying the same requirement to "right to petition" claims), *petition for cert. filed,*

---

[28] Most of the cases decided by the Eleventh Circuit that are factually similar to this case were brought as freedom of speech claims, not right to petition claims. However, in those cases, the Court does not distinguish between First Amendment retaliation claims based upon freedom of speech and those based upon the right of petition. *See, e.g., Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1529-30 (11th Cir. 1997) (rejecting claim of retaliatory discrimination because disabled employee's filing of state ante litem claim as a prerequisite to bringing a legal action against the City for discrimination did not constitute speech on a matter of public concern); *Watkins v. Bowden*, 105 F.3d 1344, 1352-54 (11th Cir. 1997) (rejecting claim of retaliatory termination based on employee's complaints of harassment, explaining that "if Watkins' complaints did not affect a matter of public concern, her First Amendment claims must fail"); *Renfroe v. Kirkpatrick*, 722 F.2d 714, 715 (11th Cir. 1984) (rejecting retaliatory non-rehiring claim of teacher who had filed a grievance with the Superintendent of Education, stating that "plaintiff's grievance is protected under the First Amendment only if it related to a matter of public concern").

66 U.S.L.W. 3790 (U.S. June 2, 1998) (No. 97-1955). If so, the court must weigh the employee's First Amendment interest against the interest of the public employer. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968) (the court must balance "an employee's interest as a citizen in commenting on matters of public concern . . . against the state's interest as an employer 'in promoting the efficiency of the public services it performs through its employees.'"); *Watkins*, 105 F.3d at 1352. If the employee prevails on the balancing test, the fact-finder determines whether the employee's speech was a substantial motivating factor in the employment decision. *Id.* Then, the defendant must prove by a preponderance of the evidence, if it can, that it would have reached the same decision even in the absence of the protected conduct. *Id.*

The initial inquiry of whether the alleged speech is "fairly characterized" as a matter of public concern is decided by the court as a matter of law. *Dermero v. Watkins*, 939 F.2d 908, 910 (11th Cir. 1991). By contrast, the subsequent steps in the court's inquiry, which include balancing the employee's First Amendment interest against the interest of the public employer, involve a factual inquiry. *See Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 915 n.24 (11th Cir. 1993) (citing *Pickering*, 391 U.S. at 568, and *Ferrara v. Mills*, 781 F.2d 1508, 1513 (11th Cir. 1986)). Therefore, the initial inquiry is appropriate for consideration on motions to dismiss such as the motions before the court in this case, whereas the subsequent inquiries must await summary judgment or trial.

On the motions to dismiss, the court is required to review the speech at issue in order to determine whether it involves "matters of public concern" or "matters only of personal interest." *Connick*, 461 U.S. at 147; *Peterson v. Atlanta Housing Authority*, 998 F.2d

904, 915 (11th Cir. 1993). "For a public employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. In making its determination, the court must consider: (1) the "content, form and context" of the employee's statements; (2) the employee's attempts to make her concerns public; and (3) the employee's motivation in speaking. *Id.* "In applying the 'content, form and context' analysis, the Supreme Court has directed courts to consider whether the speech at issue was made in the employee's role as a citizen or an employee." *Demero*, 939 F.2d at 910.

Recent decisions of the Eleventh Circuit Court of Appeals illustrate what speech by a public employee rises to the level of a "matter of public concern" and what speech does not. First, in *Kurtz v. Vickrey*, the court considered whether two published letters and various memoranda from Kurtz, a tenured professor, to Vickrey, the university president, as well as several discussions between them, rose to the level of matters of public concern. 855 F.2d 723, 730 (11th Cir. 1988). The court found that Kurtz's speech revealed his concern about his own salary[29] and the personal animosity between Kurtz and Vickrey and held that issues of personality conflict and salary level are not matters of public concern. *Id.* at 728-29; *see also Ayoub v. Texas A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991) (complaints that focused on individual compensation did not involve a matter of public concern). However, Kurtz's letters and memoranda also concerned topics relating to the management of the university, such as the misuse of public dollars allocated for education. *Kurtz*, 855 F.2d at

---

[29] In a published letter, Kurtz criticized Vickrey's characterization of the average salary of faculty members, addressing the discrepancy between his salary and the average salary quoted by Vickrey by asking, "where is my $2,000?" *Kurtz*, 855 F.2d at 725.

729-30. Because "the content of his criticism of the university's spending priorities related to a matter of public concern," the court held that Kurtz's expression was protected by his right to free speech. *Id.*

On the other hand, in *Ferrara v. Mills*, the Eleventh Circuit held that a high school teacher's complaints regarding the school's use of a collegiate registration procedure and the school's practice of filling teachers' vacancies did not constitute speech on matters of public concern. 781 F.2d 1508 (11th Cir. 1986). The court found that Ferrara's speech regarding collegiate registration was motivated by "his inability to maintain control of students and to effectively enforce discipline, . . . a matter of interest only to Ferrara." *Id.* at 1515-16. In addition, the court found that the principal "responded to the criticism of collegiate registration and abolished the practice." *Id.* at 1516. In holding that Ferrara's complaint concerning teacher assignments was not public speech, the court noted that Ferrara's concerns were expressed in the context of a meeting with the principal to discuss his own course assignments for the following academic year; his complaint was that another teacher had been assigned to teach an advanced course that he had requested—clearly not a matter of public interest. *Id.*

In *Demero v. Watkins*, the Eleventh Circuit considered the factual distinctions between *Ferrara* and *Kurtz* and concluded that letters written by employees of a county clerk's office containing allegation of sexual harassment by their supervisor were more similar to the unprotected expression in *Ferrara* than to the protected expression in *Kurtz*. *Demero*, 939 F.2d at 911-12. In *Demero*, the court found that even though an employee's complaint of wrongful conduct by a public official, including sexual harassment, is

ordinarily a matter of public concern, "the particular circumstances of this case" indicated that the employees' complaints were made in their "own personal interest." *Id.* at 912; *accord Badia v. City of Miami*, 133 F.3d 1443, 1446 (11th Cir. 1998) (recognizing a split among other circuits and a lack of clearly established law in this circuit on whether an EEOC charge and a federal court complaint for employment discrimination by a public employee involving otherwise personal matters is protected). The court found that these employees' complaints were made in their "own personal interest," not because the employees' letters sought compensation for the alleged wrongful conduct, but because the employees did not make their demand for compensation until six months after "the county eliminated the atmosphere of sexual harassment." *Demero*, 939 F.2d at 912.

In *Peterson v. Atlanta Housing Authority*, the Eleventh Circuit recognized that speech by public employees about their jobs "may often be interpreted in more than one way," and those interpretations "need not be mutually exclusive." 998 F.2d at 916. The court lamented, "There are simply no firm guidelines from which to work in determining whether speech is primarily of public concern or primarily personal." *Id.* Thus, the court in *Peterson* concentrated on "a critical word . . . 'fairly'," which originated from the Supreme Court's declaration in *Connick* that if the speech in question "cannot be fairly characterized as constituting a matter of public concern," it is unnecessary to examine the reasons for an employee's discharge. *Id.* (citing *Connick*, 461 U.S. at 146). "In order to determine the 'fairness' of a characterization," according to the court in *Peterson*, "it is relevant to examine whether the public interest is asserted on the basis of a vague and general assumption that the public would be interested, versus an articulable, specific public

40

interest." *Id.* Therefore, the court found that Peterson, a municipal housing authority employee, spoke about a matter "fairly characterized" as a matter of public concern when (1) she complained to her supervisor about the chronic under-staffing of her maintenance crew, which meant that she was unable to keep abreast of maintenance at a public housing facility, and (2) she refused to "pre-lease" vacant units at the facility because of her concern that they did not meet federal Housing Quality Standards. *Id.* at 907-09, 916-17. The court noted that Peterson's agency was under "rather intense scrutiny from the media regarding maintenance and crime in the projects," and the court concluded that, "[a]lthough some of Peterson's speech was couched in terms of her ability to do her job effectively, the thrust of her communications was not merely concern over her own effectiveness, but concern about meeting the requirements of [her agency's] mission as set out by HUD." *Id.* at 916.

The *Peterson* court observed that "merely because speech has a personal component does not render it 'not' of public concern." *Id.* Similarly, according to the court, "speech need not be aired 'publicly,' to the media for instance, in order for it to be a matter of public concern." *Id.* The employee's First Amendment rights are not lost simply because he "arranges to communicate privately with his employer rather than to spread his views before the public." *Id.* (quoting *Givhan v. Western Consolidated School District*, 439 U.S. 410, 415-16 (1979)). Also, the degree of public interest in an issue, while a factor to be considered, is not dispositive of whether something is a matter of public concern. *Ferrara*, 781 F.2d at 1514.

In *Morgan v. Ford*, a correctional officer at the Augusta Correctional Medical Institute (ACMI) served as a witness for a colleague who had pursued a sexual harassment

41

complaint against their immediate supervisor, John Ford; she told the Superintendent of ACMI of Ford's harassing behavior toward her; she pressed charges against Ford with the Georgia Department of Corrections Internal Affairs Division; and she filed a sexual harassment charge against Ford with the Georgia Office of Fair Employment Practices. *Morgan*, 6 F.3d at 752-53. Unlike in *Peterson*, however, the Eleventh Circuit affirmed the district court's entry of summary judgment against Morgan, finding that "the main thrust of her speech took the form of a private employee grievance." *Id.* at 755.

Most recently, in *Watkins v. Bowden*, an employee of the county solicitor's office claimed retaliation by her employer in violation of her right to free speech for her complaints of sexual and racial harassment in her workplace. 105 F.3d at 1351. The Eleventh Circuit held that complaints by this plaintiff had "a far more private and informal flavor than the employee's speech at issue in *Morgan*." *Id.* at 1353. According to the court, the plaintiff's complaints focused on how her colleagues behaved toward her and how that conduct affected her work. *Id.* As such, the court found that her speech "was made in her capacity as an employee, rather than in her 'role as a citizen.'" *Id.* (citing *Kurtz*, 855 F.2d at 727).

In this case, the content of Bodie's alleged speech relates to matters of "political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. Bodie alleges that during the time period leading up to the City's decision to transfer her, she experienced "a progressive decrease in the quality and quantity of janitorial services provided for the City Clinic." *Complaint* at ¶ 34(1). She alleges that other employees were transferred from the building which housed the Clinic, "leaving [her] as the sole employee assigned to work in

42

the somewhat isolated City building located adjacent to an understaffed and then poorly secured inmate work release facility at the old Huntsville airport." *Id.* at ¶ 34(2). She alleges that "Wall visited the City Clinic, and as a practicing dentist, knew or should have recognized the inadequacies of the facility for rendering medical care, including: the total absence of janitorial facilities and the total absence of means for biohazard disposal . . . ." *Id.* at ¶ 42(c).

Bodie alleges that she expressed her concern in the form of a memo to the Mayor and each member of the City Council, "requesting something be done immediately to remedy the situation." *Id.* at ¶ 35. She alleges that, when Hall refused to take action, she "properly appealed to the City Personnel Committee." *Id.* at ¶ 39. And, she alleges that even though "[s]ome remedial measures occurred," she appealed her grievance to the City Council, which placed the grievance on the regular agenda and heard her concerns at an open meeting on January 19, 1989. *Id.* at ¶¶ 39-41. Therefore, following the alleged procedure in her employee handbook, the form of her original expression was a private memo and a personnel grievance procedure. But when she did not get the results she had hoped for, she took her grievance to the public forum of a City Council meeting.

While Bodie's expression was made in the context of a personnel grievance procedure, she does not allege that she complained just about her own personal safety and sanitation; instead, she states an unspecified concern for "safety and sanitation" at the Clinic. *Id.* at ¶ 34; *but see id.* at ¶ 38 (quoting Hall as responding to "her 'concerns regarding [her] safety'"). Furthermore, Bodie alleges that she received an inadequate response from the City in the early stages of expressing her concerns and that she

43

encountered animosity from Hall in response to her initial written request for relief. *Id.* at
¶¶ 36-37.

Finally, the court must consider Bodie's attempts to make her concerns public and
her motivation in speaking. According to her allegations in the amended complaint, Bodie
did not attempt to express her concerns to anyone other than the decisionmakers for the
City. She did not attempt to keep her concerns private, however, because her appeal to the
City Personnel Committee and to the City Council were presumably public proceedings.
And although it is difficult to judge Bodie's motivation, viewing the amended complaint in
a light most favorable to Bodie, she could have been motivated, at least in part, by concern
for the public welfare when she allegedly complained about conditions at the Clinic.

Therefore, considering the alleged content, form, and context of Bodie's expression,
as well as her alleged lack of effort to keep her concerns private and her possible
motivation in speaking, the court finds that Bodie's alleged expression cannot be fairly
characterized as a matter of purely private concern. Accordingly, to the extent that Bodie
states a claim for retaliation by the City for the exercise of her right to free speech under
the First Amendment, as incorporated into the Fourteenth Amendment, Count Two of her
amended complaint is not due to be dismissed.

     **b.**    **Equal Protection.**

On the other hand, excluding her free speech claim, the allegations in Count Two
of the amended complaint do not state a claim pursuant to the Equal Protection Clause of
the Fourteenth Amendment for two reasons. First, Count Two, unlike Count One, does not
even allege that Bodie was treated differently from anyone else when the City decided to

44

transfer her from the Clinic to the jail. Count Two thus fails to state an equal protection claim because it does not allege that the City treated Bodie differently from other similarly situated employees. *See Strickland*, 830 F.2d at 1109.

Second, even if Bodie had alleged that the City treated her differently from other similarly situated employees, she still would not state a claim under the Equal Protection Clause in Count Two because the action of the City Council was rationally related to a legitimate interest of the City. In both Count One and Count Two, Bodie complains of a "deliberate choice" made by the City Council. In Count One, Bodie complains of the City Council's "choice" to leave her in the allegedly unsafe and unsanitary conditions of the City Clinic; in Count Two, Bodie complains of the City Council's "choice" to transfer her away from those alleged conditions.[30] However, excluding her free speech claim, under the analysis of Section III.A.2.a, *supra*, both choices would involve legislation on social or economic issues, not legislation that classifies individuals by race, alienage, national origin, or gender, and not legislation that impinges upon a recognized fundamental right. Therefore, as discussed earlier, except to the extent that Bodie complains of a violation of her right to free speech, a rational basis analysis applies to the City Council's alleged decision to transfer Bodie from the City Clinic to the City Jail.

Under rational basis analysis, this court must "determine if 'any set of facts may be reasonably conceived of to justify' the legislation." *Cash Inn of Dade*, 938 F.2d at 1241; *see*

---

[30] A second difference between the allegations in Count One and Count Two with respect to an equal protection claim is that, in Count One, Bodie does not allege that the City Council's "choice" to keep her in the City Clinic was intentional or purposeful, whereas, in Count Two, Bodie alleges that the City Council's "choice" to transfer her away from the City Clinic was in "retaliation" for her complaints. Therefore, Count Two, unlike Count One, alleges intentional or purposeful discrimination by the City.

*also supra* Section III.A.2.a. First, Bodie alleges that the conditions at the City Clinic had deteriorated over the two years prior to her transfer, and this court recognizes that the City may have a legitimate interest in safe and sanitary conditions at the City Clinic. Second, Bodie alleges that the City transferred operations of the Clinic to Huntsville Hospital. While transferring operations of the Clinic may not have been in Bodie's best interest, it could be rationally related to the City's interest in improving conditions at the Clinic. As noted earlier, this court cannot judge the wisdom, fairness, or logic of the City Council's legislative choices. Therefore, the governmental action of which Bodie complains was rationally related to a legitimate government interest.

Accordingly, construing the complaint in a light most favorable to Bodie, except to the extent that Bodie alleges violations of her right to free speech, Count Two of the amended complaint fails to state a claim under the Equal Protection Clause because it does not allege that the City treated Bodie differently from other similarly situated employees and because the alleged action was rationally related to a legitimate interest by the City.

    c.    **Substantive Due Process.**

Bodie also does not state a claim under the Due Process Clause of the Fourteenth Amendment. In Count Two of her amended complaint, Bodie claims "a property interest in her position as City Nurse," pursuant to the Employee Handbook.[31] *Complaint* at 12 (¶ 54). She alleges that she was deprived of that "property interest" when the City Council "made the deliberate choice in selecting the option that would 'transfer' [her] from her position as

---

[31] This claim is different from Bodie's claim in Count One to the extent that in Count One she claims "a liberty interest in safe working conditions." *Complaint* at 11 (¶ 48).

City Nurse to Jail Nurse, which, on its face, was a demotion." *Id.* at 12 (¶ 56). As discussed in Section III.A.2.b, *supra*, the Due Process Clause operates in two distinct ways: it protects substantive rights and it protects procedural rights. This section of this opinion examines whether, in count Two, Bodie states a cognizable claim for violation of her substantive due process rights, exclusive of her free speech claim. The next section considers any procedural due process claims in Count Two.

The issue in Count Two is the extent to which substantive due process serves to protect a state created "property interest" in public employment. As discussed in Section III.A.2.b, *supra*, the constitutional guarantee of substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746. When the Supreme Court invokes substantive due process, it does so to protect a "fundamental interest" or otherwise to preclude the abusive exercise of government power. As noted in *Collins*, "the Court has always been reluctant to expand the concept of substantive due process." *Collins*, 503 U.S. at 125, 112 S. Ct. at 1068. Hence, remaining largely outside the scope of substantive due process jurisprudence are tort law, *see Daniels*, 474 U.S. at 332, and public employment law, *see, e.g., Bishop*, 426 U.S. at 350, and *Roth*, 408 U.S. at 577-78. Areas in which substantive rights are created only by state law, as is the case with tort law and employment law, are generally not subject to substantive due process protection because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring). Therefore, the Fourteenth Amendment does not create a substantive right to continued employment, only a right to

47

procedural due process whenever the government seeks to terminate a substantive right created by state law. *Roth*, 408 U.S. at 577.

*McKinney v. Pate* reversed a decade of Eleventh Circuit substantive due process employment termination cases, holding that "in non-legislative cases, only procedural due process claims are available to pretextually terminated [public] employees." *McKinney*, 20 F.3d at 1558, 1560; *accord North Fla. Educ. Dev. Corp. v. Woodham*, 942 F. Supp. 542, 549 (N.D. Fla 1996) ("It is the law of this Circuit that state-created substantive rights taken away through executive or non-legislative governmental action may not form the basis for a substantive due process claim."). The Eleventh Circuit had previously "incorrectly placed the claims of pretextually terminated employees on the substantive due process side of the ledger." *McKinney*, 20 F.3d at 1560. *McKinney's* holding has been "specifically limited to substantive due process challenges to non-legislative acts." *TRM, Inc. v. United States*, 52 F.3d 941, 945 n.17 (11th Cir. 1995). In this case, therefore, Bodie can not state a substantive due process claim, notwithstanding her free speech claim, if the decision to transfer her from the City Clinic to the jail was a non-legislative decision.

In *McKinney*, the Eleventh Circuit explained the distinction between legislative acts and non-legislative or executive acts:

> Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations. Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples. The analysis, and the substantive/procedural distinction discussed above, that is appropriate for executive acts is inappropriate for legislative acts. For instance, only when addressing legislative acts has the Supreme Court

48

> mandated that states must demonstrate that they are violating private interests
> only as necessary to promote state interests. A similar balancing test is not
> found in executive-act cases.

*Id.* at 1557 n.9 (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*,

442 U.S. 1, 7 (1979); other citations omitted).

Under this analysis, almost all decisions to transfer individual government employees

are non-legislative decisions. *See, e.g., Nat'l Assoc. of Gov't Employees, Inc. v. Barrett*, 968

F. Supp. 1564, 1575 n.17 (N.D. Ga. 1997) (after *McKinney*, deputy sheriff terminated by a

"non-legislative" decision of the Personnel Board can not maintain a substantive due

process claim). In *Parks v. City of Warner Robins*, the Eleventh Circuit noted that in an

earlier decision a police chief's reassignment of his personal secretary to another

department after she married one of his subordinates was "quintessentially an executive

act." 43 F.3d 609, 613 n.2 (11th Cir. 1995) (citing *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir.

1994)). In *Parks*, however, the court held that the city's anti-nepotism act, which prohibited

city employees from working in the same department with relatives who held supervisory

positions in that department, was a legislative enactment. *Parks,* 43 F.3d at 613 n.2. Relying

on *McKinney,* the Eleventh Circuit noted that the basis for distinction between the

legislative act in *Parks* and the non-legislative decision in *McCabe* was that non-legislative

decisions "characteristically apply to a limited number of persons" and "typically arise from

the ministerial or administrative activities of members of the executive branch," whereas

legislative acts "generally apply to a larger segment of . . . society" and include "laws and broad-ranging executive regulations."[32] *Id.* (citing *McKinney*, 20 F.3d at 1557 n.9).

In this case, according to the factual allegations in the amended complaint, the decision to transfer Bodie was more than just a decision regarding the location of Bodie's job assignment. Bodie's transfer resulted from a decision of the City to contract with the Hospital "to assume overall management of the City Health System, including the City Clinic but excluding the City Jail." *Complaint* at ¶ 45(1). However, in Count Two, Bodie does not complain that she was harmed by the decision to contract out City health care services; she complains that she was damaged because the City retaliated against her for her complaints about conditions at her workplace. Although the decision was allegedly made by the City Council, which sits as a legislative body, a decision to transfer an employee is one that "typically arise[s] from the ministerial or administrative activities of members of the executive branch." *McKinney*, 20 F.3d at 1557 n.9. Furthermore, the alleged decision to transfer Bodie affected only Bodie, not "a larger segment of . . . society," because,

---

[32]The Eleventh Circuit has made similar distinctions in the context of city zoning regulations. Following *McKinney*, in *Boatman v. Town of Oakland*, the Eleventh Circuit denied a substantive due process challenge to a city's refusal to mandate that a building inspector grant property owners a certificate of occupancy for their "manufactured home." 76 F.3d 341 (11th Cir. 1996). Considering the city's refusal an administrative act, the court stated, "[t]he notion that the Constitution gives a property owner a substantive right to a correct decision from a government official . . . is novel indeed." *Id.* at 346; *Accord Malone v. Parker*, 953 F. Supp. 1512, 1515 (M.D. Ala. 1996) (builder alleging that Home Builder's Licensure Board improperly denied his license renewal application does not state substantive due process claim), *aff'd,* 130 F.3d 444 (11th Cir. 1997).

On the other hand, in *Restigouche v. Town of Jupiter*, the property owner commenced an action after the city denied his application to build an automobile campus. 59 F.3d 1208 (11th Cir. 1995). In that case, the plaintiff challenged the constitutionality of the town's regulation prohibiting automobile sales—a legislative act—and the town's application of the regulation to the plaintiff. Id. at 1210-11. Although the court permitted the plaintiff's substantive due process claim, as applied, the court ultimately determined that the town's regulation passed constitutional muster. *Id.* at 1215. However, to the extent that the plaintiff alleged that the city failed to apply its regulations and policies properly, they complained of a non-legislative decision. *Accord Kantner v. Martin County*, 929 F. Supp. 1482, 1486 (S.D. Fla. 1996) (no cognizable substantive due process claims because plaintiffs did not challenge the validity of the county's zoning regulations, but rather the county's "'incorrect' land use decisions"), *aff'd,* 142 F.3d 1283 (11th Cir. 1998).

50

according to her amended complaint, other City employees had already been transferred away from the City Clinic. *Id.*; *Complaint* at ¶ 34(2). Consequently, the alleged adverse employment decision of which Bodie complains in Count Two could easily be construed as more administrative than legislative, thereby invoking no substantive due process right. At this stage of the litigation, however, construing the allegations in the amended complaint in a light most favorable to Bodie, this court cannot say, beyond all reasonable doubt, that the alleged decision to transfer Bodie was administrative rather than legislative.[33]

Nevertheless, even if Bodie does allege a violation of her substantive due process rights, then the alleged violation (her free speech claim excepted) is analyzed according to the rational basis test. *See TRM, Inc.*, 52 F.3d at 945 ("Substantive due process claims, not involving a fundamental right, are reviewed under the rational basis test."); *see also Parks*, 43 F.3d at 614-15 (reviewing under rational basis test anti-nepotism policy that did not directly and substantially interfere with the fundamental right to marry); *In re Wood*, 866 F.2d 1367, 1371 (11th Cir. 1989) ("The standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the 'rational relationship' test for evaluating equal protection claims. . . . [A]ny plausible reason supporting Congress' action in enacting the suspect legislation satisfies the 'rational basis' test."); *Silver v. Baggiano*, 804 F.2d 1211, 1218 (11th Cir. 1986) ("[I]n order to satisfy

---

[33] This result is compatible with the court's conclusion in Section III.D.1.a, *infra*, finding that the individual members of the City Council are entitled to absolute legislative immunity from any personal liability for any alleged constitutional violations arising out of their participation in the decision that resulted in Bodie's transfer from the City Clinic to the City jail.

substantive due process requirements, the legislation must be rationally related to its

purpose and must not be arbitrary or discriminatory.").

The rational basis test in the context of a substantive due process claim is not a

rigorous standard. As the Eleventh Circuit has explained:

> This test is generally easily met. A searching inquiry into the validity of
> legislative judgments concerning economic regulation is not required. . . .
> The task is to determine if 'any set of facts may be reasonably conceived to
> justify' the legislation. . . . To put it another way, the legislation must be
> sustained if there is any conceivable basis for the legislature to believe that
> the means they have selected will tend to accomplish the desired end. Even
> if the court is convinced that the political branch has made an improvident,
> ill-advised or unnecessary decision, it must uphold the act if it bears a rational
> relation to a legitimate governmental purpose.

*Cash Inn of Dade, Inc.*, 938 F.2d at 1241 (11th Cir. 1991) (reviewing local ordinance

requiring pawn shop owners to close at 5:00 p.m.) (citations omitted). Moreover, this court

will consider "any rationale [the legislators] 'could' have had for enacting the statute . . .

regardless of whether [they] actually considered that rationale at the time the [enactment]

was passed." *United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir.), *cert. denied*, 506 U.S.

901 (1992).

In the present case, this court has already found an ample rational basis for the City's

alleged decision to transfer Bodie from the City Clinic to the jail in the context of the Equal

Protection Clause. *See supra* Section III.B.2.b. Because Bodie alleges that the conditions

at the City Clinic had deteriorated over the two years prior to her transfer and because the

City may have a legitimate interest in safe and sanitary conditions at the City Clinic, the

City's alleged decision to transfer operations of the Clinic to Huntsville Hospital and, at the

52

same time, to transfer Bodie to the jail, was rationally related to the City's legitimate interest in improving conditions at the Clinic.

Bodie also fails to state a substantive due process claim in Count Two, exclusive of her free speech claim, because she does not complain of an arbitrary government action that "shocks the conscience" of the court. *See supra* Section III.A.2.b. As noted earlier, "[d]ecisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Collins*, 503 U.S. at 128. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop*, 426 U.S. at 350.

Accordingly, construing the complaint in a light most favorable to Bodie, except to the extent that Bodie alleges violations of her right to free speech, Count Two of the amended complaint fails to state a substantive due process claim because: (1) the alleged adverse employment decision of which Bodie complains, although arguably legislative in nature, was rationally related to a legitimate interest by the City; and (2) Bodie does not complain of an arbitrary government action that "shocks the conscience" of the court.

### d.    Procedural Due Process.

Bodie is also unable to state a procedural due process claim in count Two of her amended complaint. As discussed in Section III.A.2.c, *supra*, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits

53

and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Someone claiming a property interest must have more than an "abstract need" or a "unilateral expectation." *Id.*

Transfers and reassignments have generally not been held to implicate property interests. *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988); *see also Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir. 1988) (plaintiff has no property interest in employment at particular office of state welfare agency); *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (no property interest at issue when Department Head reassigned to regular teaching duties); *Childers v. Independent Sch. Dist.*, 676 F.2d 1338, 1341 (10th Cir. 1982) (tenured teacher has property interest in continued employment but not in particular assignment); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (reappointment of non-tenured faculty member with concurrent reduction of teaching duties does not deprive plaintiff of property interest). The Eleventh Circuit has been "unwilling to hold that a transfer, which involves no loss of pay and no loss of rank, deprives a plaintiff of a protected liberty or property interest." *Oladeinde*, 963 F.2d at 1486. "The internal transfer of an employee, unless it constitutes such a change in status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest." *Faucher*, 891 F.2d at 869.

In Count Two, Bodie alleges that she was deprived of her "property interest in her position as City Nurse" when the City transferred her to the position of Jail Nurse. *Complaint* at 12 (¶¶ 54, 56). Although she claims her transfer was, "on its face, a demotion," Bodie does not allege a diminution of pay or a loss of rank. *Id.* at 12 (¶ 56). Therefore, under

the facts alleged in Count Two, Bodie can not state a claim for violation of her procedural due process rights.

Even if Bodie did allege facts in Count Two sufficient to invoke procedural due process protection, Bodie was afforded adequate protection. As discussed in detail earlier, Bodie received constitutionally sufficient notice and opportunity to be heard prior to her alleged transfer to the jail. *See supra* Section III.A.2.c. Furthermore, the State of Alabama provides constitutionally adequate procedures by which employees can gain redress of their grievances, and Bodie can not state a procedural due process claim so long as this adequate state remedy is available. *Id.*

Accordingly, in Count Two of her amended complaint, Bodie fails to state a claim for which relief can be granted for a violation of her procedural due process rights for three reasons: (1) Bodie does not allege a diminution of pay or a loss of rank, and she has no property interest in employment at a particular location; (2) according to her own factual allegations, Bodie was afforded adequate notice and an opportunity to be heard; and (3) the State of Alabama has available to Bodie a procedure for redress of her grievances, which she has not pursued. Therefore, any procedural due process claim against the City in Count One is due to be dismissed.

### 3.   *Summary.*

After careful consideration of the allegations in Count Two of the amended complaint, the court can divine no constitutional basis upon which Bodie could possibly state a cognizable claim. Bodie explicitly claims violation by the City of her rights under the Fourth Amendment in Count Three, which is discussed *infra* along with any possible claim

pursuant to the Fifth Amendment. Viewing the amended complaint in a light most favorable to Bodie, Count Two of the amended complaint states a claim for violation of Bodie's right to free speech under the First and Fourteenth Amendment to the U.S. Constitution but fails to state a claim upon which relief can be granted pursuant to any other provision of the U.S. Constitution. Furthermore, Bodie's claims are time barred by the statute of limitations applicable to § 1983 actions except for claims arising out of events occurring after January 10, 1990; the only alleged event in the amended complaint occurring after that date is the City Council meeting on January 11, 1990.

Accordingly, Bodie's claims in Count Two are due to be dismissed except to the extent that she claims that the City violated her right to free speech at the City Council meeting on January 11, 1990.

## C. Count Three.

In Count Three of her amended complaint, Bodie claims "an entitlement to and property interest in her continued City employment," pursuant to her Employee Handbook. *Complaint* at 13 (¶ 61). She alleges that her transfer from City Nurse to Jail Nurse was "an unreasonable taking" by the City, in violation of her "Fourth Amendment right to be secure in her property against unreasonable seizures." *Id.* at 13-14 (¶¶ 63-64).

First, under the same analysis outlined in Sections III.A.1 and III.B.1, *supra*, Bodie's claims in Counts Three are time barred to the extent that they arise out of events that occurred before January 10, 1990.

Second, Bodie does not state a cognizable claim under the Fourth Amendment to the U.S. Constitution. The Fourth Amendment, applicable to the states through the Fourteenth

Amendment, assures the people will "be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[34] U.S. CONST. amend. IV; *Mapp v. State of Ohio*, 367 U.S. 643 (1961). The Fourth Amendment protects citizens from intrusions by the government into "the sanctity of a man's home and the privacies of his life." *Stone v. Powell*, 428 U.S. 465 (1976); *Michigan v. Tyler*, 436 U.S. 499 (1978). Construing the allegations in the amended complaint in a light most favorable to Bodie, she can prove no set of facts that would entitle her to relief on her claim pursuant to the Fourth Amendment.

Neither the Fifth nor Fourteenth  Amendment provide a basis for Bodie's claim in Count Three, even though she alleges that her transfer from "City Nurse to Jail Nurse" was "an unreasonable taking" by the City. *Id.* at 13-14 (¶¶ 63-64). Landowners who allege a "government taking" may state a claim under the Fifth and Fourteenth Amendments to the U.S. Constitution. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S. Ct. 3141, 3147, 97 L. Ed. 2d 677 (1987). The Takings Clause of the Fifth Amendment states, ". . . nor shall private property be taken for public use, without just compensation."[35] U.S.

---

[34] The Fourth Amendment provides in full:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

[35] The Fifth Amendment provides in full:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled

CONST. amend. V. This provision grants the government a limited power of eminent domain. *United States v. Lee*, 106 U.S. (Otto) 196 (1882). Thus, the Fifth Amendment does not undertake to regulate all losses, only those that result from the taking of property. *United States v. Willow River Power Co.*, 324 U.S. 499 (1945). Because the property interest Bodie claims was "unreasonably taken" lacks the tangibility of the property protected by the Takings Clause of the Fifth Amendment, she can prove no set of facts that would entitle her to relief claim on her claim pursuant to the Takings Clause of the Fifth Amendment.

Finally, after careful consideration of the allegations in Counts Three of the amended complaint, the court can divine no other constitutional basis upon which Bodie could possibly state a cognizable claim. Accordingly, Bodie's claims in Count Three are due to be dismissed because she fails to state a claim upon which relief can be granted. This claim is frivolous.

### D.    Count Four.

In Count Four of her amended complaint, as in Count Three, Bodie claims "an entitlement to and property interest in her continued City employment" pursuant to her Employee Handbook. *Complaint* at 14 (¶ 69). However, in Count Four, she alleges that "Hamilton, in his official capacity for Huntsville Hospital, while acting under color of state law, made a deliberate choice to materially interfere with [her] property interest in

---

in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

continued City employment, resulting in benefit to and financial gain to his employer."[36] *Id.*
at 15 (¶ 70). She alleges that this amounted to a violation of her "Fourth Amendment right
to be secure in her property against unreasonable seizure." *Id.* at 15 (¶ 71).

### 1. Statute of Limitations.

First, under the same analysis outlined in Sections III.A.1 and III.B.1, *supra*, Bodie's
claims in Counts Four are time barred to the extent that they arise out of events that
occurred before January 10, 1990. The only event alleged to have occurred within the
limitations period is the City Council meeting on January 11, 1990. Bodie does not allege,
and the court finds no reason to believe, that Hamilton participated in the alleged vote of
the City Council on January 11, 1990, resulting in Bodie's transfer from the City Clinic to the
City jail. Therefore, construing all the allegations in a light most favorable to Bodie, the court
finds no set of facts upon which she can prove a § 1983 claim against Hamilton or the
Hospital that is not time barred.

### 2. Failure to State a Claim Upon Which Relief Can Be Granted.

Second, under the same analysis in Section III.C, *supra*, Bodie does not state a
cognizable claim under the Fourth Amendment to the U.S. Constitution because the Fourth
Amendment does not protect citizens from government "seizure" of their employment
status. Likewise, as discussed in Section III.C, *supra*, the Takings Clause of the Fifth
Amendment does not protect Bodie because the Takings Clause does not protect the
intangible property interest Bodie claims was "taken." Finally, after careful consideration

---

[36] As noted previously, an "official capacity" claim against an individual is actually a claim against the
governmental entity for which that individual acts. *Monell v. City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978).
Therefore, the court will consider Huntsville Hospital as the true defendant to Count Four.

of the allegations in Count Four of the amended complaint, the court can divine no other constitutional basis upon which Bodie could possibly state a cognizable claim against Hamilton or the Hospital. The only basis under which Bodie states a claim for a constitutional violation against anyone is where, in Count Two, she alleges that the City retaliated against her for exercise of her right to free speech. However, nowhere in her amended complaint does Bodie allege that Hamilton or the Hospital retaliated against her for speaking out about the conditions of the City Clinic.

Accordingly, Bodie's claims in Count Four are due to be dismissed because they fail to state a claim upon which relief can be granted.

### 3.    *Respondeat Superior.*

Finally, Bodie cannot maintain a § 1983 claim against Hamilton in his official capacity because she does not allege a basis upon which the Hospital or the City is liable for the alleged actions of Hamilton. A § 1983 plaintiff cannot rely on a theory of respondeat superior to hold a governmental entity liable for the individual actions of its employees. *Monell v. City of New York*, 436 U.S. 658, 691 (1978); *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir. 1982). Neither can a governmental entity be held liable "solely because it employs a tortfeasor." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Monell*, 436 U.S. at 691). In order to recover against a governmental entity, a plaintiff must demonstrate that the alleged constitutional deprivation occurred pursuant to a custom or policy of the municipality. *Monell*, 436 U.S. at 694; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1503 (11th Cir. 1985), *cert. denied*, 476 U.S. 1115 (1986); *Hearn*, 688 F.2d at 1334.

60

One way to establish the existence of a policy or custom sufficient to impose § 1983 liability on a municipal government is to show that the individuals from whose actions liability arises have final decisionmaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The following succinctly summarizes the law in this area:

> At some level in [a] [c]ity's bureaucracy there must be officials whose acts reflect [c]ity policy. Because [a] [c]ity acts through its agents, municipal liability under § 1983 attaches to actions taken pursuant to the decision of a policymaker. And a policymaker is one with the authority or responsibility for establishing final government action. Thus, municipal liability attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question."

*Arrington v. Dickerson*, 915 F. Supp. 1503, 1511 (M.D. Ala. 1995) (quoting Pollard *v. City of Chicago*, 643 F. Supp. 1244, 1252 (N.D. Ill. 1986)) (internal citations omitted). The Supreme Court has held that the determination of whether a person has final decisionmaking authority in a particular area is a matter of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737-38 (1989) (following the plurality in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). As discussed in Section III.E.1.b, *infra*, this court acknowledges that, under Alabama law, the City Council has the authority to define the terms of city employment. Because the City Council has final decisionmaking authority over Bodie's job assignments, then the City may be liable for the actions of the City Council in this regard. *Accord Arrington v. Dickerson*, 915 F. Supp. 1503, 1511 (M.D. Ala. 1995) (city can be held liable under § 1983 for alleged actions of Montgomery City Council because, under Alabama law, it was the final decisionmaker in denying a liquor license application).

61

Bodie does not allege, and the court finds no basis to infer, that Hamilton, allegedly a Vice-President at the Hospital, was the final decisionmaker in a decision which resulted in a deprivation of Bodie's alleged "property interest in continued City employment." Furthermore, Bodie does not allege, and the court finds no basis to infer, that Hamilton followed any "established custom or policy" of the Hospital or City that deprived Bodie of any property interest. Absent such a causal connection between the government entity's responsibility and Bodie's alleged injury, the City or the Hospital cannot be held liable for the actions of Hamilton in his official capacity. *See Parker*, 862 F.2d at 1477 (citing *Monell*, 436 U.S. at 690).

### 4.   *Summary.*

In addition to being time-barred by the two-year statute of limitations applicable to § 1983 actions, Bodie's claims in Count Four are due to be dismissed because they fail to state a cognizable claim for violation of the Fourth Amendment or any other provision of the U.S. Constitution and fail to allege a basis for liability by the City or Hospital for the actions of Hamilton in his official capacity. The claim is frivolous.

### E.   Count Five.

In Count Five of her amended complaint, Bodie alleges that she had "a property interest in her City employment." *Complaint* at 15 (¶ 67). She further alleges that the City Councilmen "in their individual capacities, under color of law and in abuse of their elected offices, trespassed to, materially interfered with, and caused the deprivation of [her] property interest in her City employment." *Id.* at 15 (¶ 69). Finally, she alleges that the "City

Councilmen, in their individual capacities, acted with wantonness and reckless indifference to the consequences of their actions." *Id.* at 16 (¶ 70).

In her brief submitted September 15, 1997, in response to defendants' motions to dismiss, Bodie characterizes her claim in Count Five as "a pendent state claim." *Brief in Support of Plaintiff's Responses to Defendants' Motions to Dismiss* (hereinafter *"Plaintiff's Brief"*) at 14. In her brief, Bodie stringently argues that her claim is for trespass, not "trespass on the case," apparently in response to defendants' argument that an action for trespass on the case is barred by a two-year statute of limitations. *Id.* at 13. She also cites Ala. Code § 6-5-262, Alabama's codification of common law trespass to personal property, as the basis for her claim. *Id.* at 14. Finally, she titles her claim in Count Five as "Trespass to Personal Property." *Id.*; *Complaint* at 15. Therefore, in Count Five, Bodie asserts an individual capacity claim against members of the City Council for trespass to personal property, a state law tort.[37]

### 1.    *Immunity from Personal Liability.*

State governments and the federal government have long recognized the importance of providing protection to elected representatives; legislators "require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Therefore, legislators enjoy

---

[37] On the face of her amended complaint, Bodie's trespass claims are not time barred. Under Alabama law, an action for trespass to personal property must be commenced within six years of the event that gives rise to the claim. Ala. Code § 6-2-34(2) (1975). The statutory time period begins to run when the injury occurs or when the damage accrues, not when the act that causes the injury or damages occurs. *Bradley & McWhirter, Inc. v. Conklan*, 178 So. 2d 551 (Ala. 1965). In this case, Bodie alleges that the decision of the City Council at their regular meeting on January 11, 1990, resulted in her transfer from the Clinic to the jail; Bodie filed this lawsuit on January 10, 1992. Therefore, the event of which Bodie complains in Count Five, her transfer, fell well within the six-year limitations period.

various degrees of immunity from personal liability depending upon the nature of the duties they perform.

a.    **Absolute Legislative Immunity.**

In certain situations, legislators enjoy unqualified or absolute immunity from personal liability. The extent to which unqualified immunity protects legislators varies among the states and the federal government. Although Bodie does not allege any federal constitutional violations against the individual members of the City Council in Count Five or anywhere in this lawsuit, the court will briefly consider why, under the factual allegations in her amended complaint, Bodie can not state such a claim. The court will then discuss legislative immunity from state tort liability as it applies to the individual members of the City Council.

According to the Supreme Court, even though § 1983 provides a remedy for persons alleging deprivations of their constitutional rights by government officials through action taken "under color of state law," § 1983 was not intended to abrogate the traditional immunities enjoyed by persons performing certain governmental functions. *Owen v. City of Independence*, 445 U.S. 622 (1980). Legislative immunity actually originates in the U.S. Constitution. U.S. CONST. art. I, § 6, cl. 1. The Speech and Debate Clause protects not only the speech and debate of legislators, but also voting on legislative acts. *See Kilbourn v. Thompson*, 103 U.S. 168 (1880). It is now well settled that government officials performing legislative functions at the state level are entitled to absolute immunity from suits for damages under § 1983. *Tenney v. Brandhove*, 341 U.S. 367 (1951). Absolute legislative immunity also extends to include local legislators. *See Hernandez v. City of Lafayette*, 643

64

F.2d 1188, 1193 (5th Cir. 1981). Thus, the members of the City Council in this case are entitled to legislative immunity when acting in their legislative capacities.

However, absolute legislative immunity is limited to situations where the members of the City Council are "acting within their legislative roles," performing "legislative acts." *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1011 (11th Cir. 1992) (quoting *Tower v. Glover*, 467 U.S. 914, 920 (1984)). The immunity "extends only to actions taken within the sphere of legitimate legislative activity." *Id.* (quoting *Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989)). The nature of the act, and not the position of the actor, determines when absolute legislative immunity will apply. *See Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992). Therefore, whether the members of the City Council are entitled to such immunity depends upon whether when making their decisions about the Clinic, which allegedly resulted in Bodie's transfer, they were acting in their legislative capacity.

An act is deemed legislative—rather than administrative or managerial—when it is policymaking and of general application. *See Brown*, 960 F.2d at 1011. "Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected." *Yeldell*, 956 F.2d at 1062 (quoting *United States v. Brewster*, 408 U.S. 501, 517 (1972)). Voting is not automatically a legislative act. *See Crymes v. DeKalb County, Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (act of voting alone does not make act legislative if the vote simply enforces existing policy instead of creating policy); *see also Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995). However, "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto College, Inc. v. Line*, 888 F.2d 755,

65

765 (11th Cir. 1989). Finally, the motive of legislators is not relevant under the legislative immunity analysis. Even if the City Council members acted with bad intent, the legislative nature of the act still controls. *Woods v. Gamel*, 132 F.3d 1417, 1419 n.4 (11th Cir. 1998); *Ellis v. Coffee County Bd. of Registrars*, 981 F.2d 1185, 1191 (11th Cir. 1993) ("Absolute immunity is an absolute protection, not a good faith protection such as qualified immunity.").

According to the factual allegations in this case, the City Council's decision to transfer operation of the Clinic to the Hospital required policymaking of general application. The members of the City Council considered the results of a year-long study conducted by "Hospital management personnel and health care consultants" and "the Atlanta accounting firm of Arthur Young." *Complaint* at ¶ 32. Beginning as early as December of 1988, they heard several alternative proposals for upgrading City health care services. *Id.* at ¶¶ 33, 41, 45. Various members made on-site visits to the Clinic. *Id.* at ¶¶ 35, 42. Then, at a regular scheduled meeting of the City Council, the members deliberated and voted to contract with the Hospital "to assume overall management of the City Health Care System, including the City Clinic but excluding the City Jail . . . ." *Id.* at ¶ 45(1). Construing the factual allegations of the amended complaint in a light most favorable to Bodie, to the extent that Bodie claims constitutional violations against the individual members of the City Council, the councilmembers are entitled to absolute immunity from personal liability because they performed a "legislative act" when they made the decision which resulted in her transfer.[38]

---

[38]This court is not convinced that the distinction between "legislative acts" and "executive acts" as applied by the Eleventh Circuit to the analysis of substantive due process rights in public employment, discussed in Section III.A.2.b, *supra*, is qualitatively or quantitatively the same distinction applied to the absolute legislative immunity analysis, discussed in this section. *Compare, e.g., McKinney*, 20 F. 3d at 1557 n.9 (termination of public employment by legislative act does not invoke substantive due process protection) *with Brown*, 960 F.2d at 1011 (absolute legislative immunity for legislative acts). Regardless, this court is convinced that based upon the factual

66

With respect to Bodie's state law claims, the councilmembers may not be entitled to unqualified immunity. According to the Alabama Supreme Court, legislators are entitled to "absolute and unqualified immunity from personal liability in the performance of their duties in the consideration and adoption of a *resolution*." *Tutwiler Drug Co. v. City of Birmingham*, 418 So. 2d 102 (Ala. 1982) (emphasis added). The Alabama Court of Civil Appeals recently applied this rule narrowly, refusing to grant absolute immunity to City Commissioners where "the record was devoid of any admissible evidence indicating that the Commissioners adopted a resolution" when they terminated a city employee's contract, even though they did "vote" for his termination.[39] *Marnon v. City of Dothan*, 677 So. 2d 755, 761 (Ala. Civ. App. 1995).

In this case, according to the amended complaint, the "City Council made the deliberate choice to vote for . . . contracting with Huntsville Hospital," which resulted in Bodie's transfer. *Complaint* at ¶ 45. Construing the amended complaint in a light most favorable to Bodie, this court can not say with certainty that the City Council voted on a *resolution*. Therefore, at this stage of the litigation, under the laws of the State of Alabama, the members of the City Council are not entitled to have the state law claims against them in Count Five dismissed on the grounds of absolute immunity from personal liability.

---

allegation of the amended complaint the City Council performed a "legislative act" for the purpose of the claims in this count, no matter which analysis might be used.

[39] The court did nevertheless dismiss the claims against the individual City Commissioners, finding that they were entitled to qualified or discretionary immunity. *Marnon v. City of Dothan*, 677 So. 2d 755, 761 (Ala. 1995) (citing Ala. Code § 11-44E- 44(10)); *see infra* Section III.E.1.b.

### b.    Qualified Immunity.

The individual members of the City Council are, however, entitled to qualified immunity from both the constitutional and state law claims alleged in Count Five. The doctrine of qualified immunity represents a balance between the need for a remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The doctrine embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them. *Id.* Qualified immunity thus represents the rule, rather than the exception. *Id.* "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).

With respect to § 1983 claims for violations of the U.S. constitution, government officials performing discretionary functions are immune from liability and from suit unless the conduct which is the basis for suit violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. For a right to be "clearly established," previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

68

As the Eleventh Circuit has noted, the Supreme Court has held that a "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *GJR Investments v. County of Escambia*, 132 F.3d at 1366 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "[I]f a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." *Id.* The court in *GJR Investments* dismissed the equal protection claim against city officials in their individual capacities because the complaint failed to state an equal protection claim at all. *Id.*

Furthermore, the court in *GJR Investments* dismissed any other individual capacity claims against the city officials because the complaint did not meet the "heightened pleading standard" that applies to complaints alleging individual liability for government actors. *Id.* at 1151. As the court explained, "[w]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *Id.* at 1367 (citing *Oladeinde*, 963 F.2d at 1485); *see also Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)). Some factual detail in the pleadings is necessary to adjudicate § 1983 claims involving qualified immunity because the court must determine whether a defendant's actions violated a clearly established right. *Id.*

In this case, Bodie does not state a claim for a constitutional violation against members of the City Council in their individual capacities anywhere in her amended

69

complaint. In Count Five, Bodie claims trespass to personal property, a state law claim, against the City Councilmen in their individual capacities. In Counts One, Two and Three, Bodie alleges constitutional violations against the City Councilmen in their *official* capacities. Therefore, this court need not even reach the question of whether Bodie alleges a violation of clearly established law because—as with the plaintiff in *GJR Investments*—she "simply fails to state an [individual capacity constitutional] claim, even without the additional hurdle of the heightened pleading standard." *Id.* Furthermore, even if Bodie was attempting to state an individual capacity claim for a constitutional violation, she failed to state it with the requisite specificity. Accordingly, any individual capacity claims against the City Councilmen pursuant to § 1983 are due to be dismissed.

The members of the City council are also entitled to qualified immunity from personal liability for any claims under the laws of the State of Alabama. The general rule in Alabama is that "[c]ity officials acting within the general scope of their authority have a qualified or discretionary immunity and are not subject to tort liability for an administrative act or omission." *Taylor v. Shoemaker*, 605 So. 2d 828 (Ala. 1992). This discretionary immunity applies to "those acts to which there is no hard and fast rule as to the course of conduct that one must take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstance." *Wright v. Wynn*, 682 So. 2d 1, 4 (Ala. 1996). The Alabama Supreme Court adopted the Restatement (Second) of Torts definition of qualified immunity, which provides that "[a] public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if . . . he engaged in the exercise of a discretionary function." *Id.* (quoting

70

Restatement (Second) of Torts § 895D (1979)). Thus, just like under § 1983, city officials are immune from tort actions unless they violate "clearly established law." *Ex parte City of Birmingham*, 624 So. 2d 1018, 1021 (Ala. 1993).

Under the law of Alabama, city councils are generally empowered to perform the legislative functions of the city, including defining the terms of city employment. Ala. Code §§ 11-43-43, 43-47 (1975); *see, e.g., Marnon*, 677 So. 2d at 761 (city council statutorily empowered to terminate city manager's contract); *Ex parte City of Birmingham*, 624 So. 2d at 1021 (council empowered to hire city attorney); *City of Prichard v. Moulton*, 168 So. 2d 602 (Ala. 1968) (council empowered to contract for engineering services); *Beasley v. McCorkle*, 184 So. 904 (1938) (council empowered to create and fill position of police chief). This court cannot "substitute its judgment for that of a municipality, absent proof of unfair dealing, fraud, or bad faith." *City of Birmingham v. Wilkinson*, 516 So. 2d 585 (Ala. 1987); *see also Taxpayers & Citizens of the City of Foley v. City of Foley*, 527 So. 2d 1261 (Ala. 1988); *City of Huntsville v. Smartt*, 409 So. 2d 1353 (Ala. 1982); *Bentley v. County Comm'n for Russell County*, 84 So. 2d 490, 493 (Ala. 1955); *Van Antwerp v. Board of Comm'rs of City of Mobile*, 115 So. 239, 243 (Ala. 1928). In order to overcome a council member's qualified immunity, "[p]laintiffs must do more than allege their opinion that the municipal officials acted incorrectly." *Ex parte City of Birmingham*, 624 So. 2d at 1021.

In this case, Bodie alleges that "the City Councilmen . . . knew or should have known that [she] had a property right in her City employment." *Complaint* at 15 (¶ 68). Although she does not allege the basis for this property right in Count Five, in previous counts alleging constitutional violations against the City and the Hospital she relied upon her

71

Employee Handbook as the alleged basis for her "right to City employment." *See id.* at 11 (¶ 48), 12 (¶ 54), 13 (¶ 61), 14 (¶ 68). Even if Bodie does have a right to employment under her Employee Handbook or from some other source, however, the vote by members of the City Council at a regular scheduled meeting which altered the terms of her employment does not "violate clearly established law" in the State of Alabama. Construing the allegation in the amended complaint in a light most favorable to Bodie, under the law of Alabama, the members of the City Council are entitled to qualified immunity from personal liability for their actions as alleged in the amended complaint. Accordingly, all state law claims against members of the City Council, in their individual capacities, are due to be dismissed.

### 2.    *Failure to State a Claim Upon Which Relief Can Be Granted.*

In her amended complaint, Bodie can not state a cognizable claim for trespass to personal property under Alabama law. In Alabama, trespass is the unlawful or wrongful interference with another's possession of property. *See, e.g., Harding v. Bethesda Regional Cancer Treatment Ctr.*, 551 So. 2d 299 (Ala. 1989) (intrusion upon land without consent of possessor); *The Soap Co. v. Ecolab, Inc.* 646 So. 2d 1366 (Ala. 1994) (plaintiff stated a claim for trespass or conversion by alleging that a competitor used documents taken from a common trash receptacle on the leased premises); *see also* 2 Alabama Pattern Jury Instructions Civil No. 31.70 (2d ed.) (Supp. 1996). The Alabama legislature has codified common law trespass, providing a statutory cause of action for wrongful interference with possession of both realty and personalty. Ala. Code §§ 6-5-2 (1975), *et seq.* (real property); *Id.* at §§ 6-5-260, *et seq.* (personal property). The Code of Alabama defines trespass to personal property as follows: "Any abuse of or damage done to the personal property of

72

another unlawfully is a trespass for which damages may be recovered." *Id.* at § 6-5-262. An action for trespass to personal property is available when the alleged interference is insufficient to bring an action for conversion. The distinction between trespass and conversion is that an essential element of conversion is force, either actual or constructive. *Thompson v. Ford Motor Credit Co.*, 550 F.2d 256, 258 (5th Cir. 1977); *Cox v. Stewart*, 157 So. 2d 460 (Ala. 1934).

Intangible property, as well as tangible property, may be the subject of an unlawful interference with possession.[40] *See, e.g., Gauntt v. United Ins. Co. Of Am.*, 853 F. Supp. 1382 (M.D. Ala. 1994) (insurance policy retained by sales manager); *Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951 (Ala. 1992) (money withdrawn from insured's checking account by insurer); *Ballinger v. Liberty Nat'l Life Ins. Co.*, 96 So. 2d 728 (Ala. 1957) (corporation's refusal to register a transfer of rights of a shareholder on its books); *Bernie Hughes Lincoln Mercury v. Merritt*, 523 So. 2d 441 (Ala. Civ. App. 1988) (account owned to a customer); *Nat'l Sur. Corp. v. Allied Sys.*, 418 So. 2d 847 (Ala. 1982) (computer program); *Tarrant Am. Sav. Bank v. Smokeless Fuel Co.*, 172 So. 603 (Ala. 1937) (bank draft); *Louremore v. Berry*, 10 Ala. 130 (1851) (unpaid note). Intangible property in the form of money or funds must be specifically identifiable or segregated in order to be the subject of an action for wrongful interference. *Hunnicutt v. Higginbotham*, 35 So. 469 (Ala. 1903); *see also Coffee County Bank v. Mitchum*, 634 So. 2d 148 (Ala. Civ. App. 1993) (special deposit of proceeds from

---

[40] Because of plaintiffs' usual preference for conversion actions, there has been little litigation concerning the nature of personal property subject to an action for trespass. Michael L. Roberts & Gregory S. Cusimano, *Alabama Tort Law* § 30.1 (2nd ed. 1996). However, the Alabama Supreme Court, relying on the Alabama Code definition of unlawful interference with possession, Ala. Code § 6-5-260, has recognized that the statute does not distinguish between tangible and intangible personalty. *National Sur. Corp. v. Allied Sys.*, 418 So. 2d 847 (Ala. 1982).

73

sale of mobile home, as represented by the deposit receipt, remained the property of the depositor and could be subject of tort action against the bank); *Gillis v. Benefit Life Ins. Co.*, 601 So. 2d 951 (Ala. 1992) (cause of action where plaintiff allowed company to draw on preauthorized checks from a specific account to cover insurance premiums, but company continued to draw on premium checks after insured died); *but see Willingham v. United Ins. of Am.*, 628 So. 2d 328 (Ala. 1993) (no cause of action for conversion of insurance premiums paid by check to insurance company for invalid life insurance policy because funds were insufficiently identifiable or segregated); *Lewis v. Fowler*, 479 So. 2d 725 (Ala. 1985) (money deducted from wages as garnishment, but never paid to garnisher, could be subject of action for assumpsit but not conversion). Therefore, the type of property subject to an action for unlawful interference with possession, even though intangible, must be represented by some tangible evidence such as a document or account entry. *See Louisville & N.R. Co. v. Bartee*, 86 So. 394, 395 (Ala. 1920) ("language, however offensive, cannot alone constitute a trespass").

No court in Alabama has ever held one liable for trespass to the possession of a job. An interest in employment is simply not the type of "possessory" interest that is subject to an action for trespass or conversion. Even construing all the alleged facts in a light most favorable to Bodie, Alabama courts would not recognize a cause of action for trespass to personal property in this case, and neither will this court. Furthermore, since Bodie first filed this lawsuit in January of 1992, she has had the opportunity to amend her complaint on at least three occasions, and the court is not inclined to allow her to amend again now in order

74

to allow her to seek relief under an entirely different legal theory. Therefore, Count Five is due to be dismissed for failure to state a claim upon which relief can be granted.

### 3.    *Summary.*

In Count Five, Bodie attempts to state an individual capacity claim against members of the City Council. She  cannot hold the members of the City Council personally liable for constitutional violations pursuant to § 1983 because the defendant members of the City Council acted at all times in their legislative capacity. Therefore, they are entitled to absolute legislative immunity. Even if they were not unqualifiedly immune, however, they would be entitled to qualified immunity from a § 1983 action because the amended complaint simply fails to properly state an individual capacity constitutional claim; if Bodie does attempt to state an individual capacity claim for a constitutional violation, then she fails to state it with the requisite specificity under the Eleventh Circuit's "heightened pleading standard." Furthermore, the members of the City Council are entitled to qualified immunity from personal liability on any state law tort claim because, construing all the facts in the amended complaint in a light most favorable to Bodie, at all times, the defendant members of the City Council acted within the discretionary function of their positions and did not violate "clearly established law" in Alabama. For these reasons, Count Five of the amended complaint is due to be dismissed on the grounds of immunity. In addition, Bodie's claim for trespass to personal property in Count Five of the amended complaint is due to be dismissed for failure to state a claim upon which relief can be granted because Alabama courts would not recognize a cause of action for trespass to an interest in City employment. This claim is frivolous.

**F.      Count Six.**

Count Six of the amended complaint, like Count Five, is styled "Trespass to Personal Property." *Complaint* at 16. In this count, as in Count Five, she alleges "a property interest in her City employment." *Complaint* at 16 (¶ 73). In her brief in response to defendants' motions to dismiss, Bodie characterizes her claim in Count Six as "a pendent state claim." *Plaintiff's Brief* at 14. Unlike in Count Five, however, she alleges in Count Six that Hamilton, "in his individual capacity, . . . trespassed to and materially interfered with [her] property right in her employment, causing her to be subjected to the deprivation of said property." *Id.* at 16 (¶¶ 74-75). She also alleges that "Hamilton acted in wanton disregard of [her] rights and with reckless indifference to the consequences of his respective behavior." *Id.* at 16 (¶ 76). In Count Six, therefore, Bodie attempts to bring an individual capacity lawsuit against Hamilton for the state law tort of trespass to personal property.

In the amended complaint, Hamilton is alleged to be "an employee of Huntsville Hospital [who] worked in the position of vice-president or other position of management." *Complaint* at ¶ 18. According to Bodie, the Hospital is properly known as the "Health Care Authority of the City of Huntsville" and is "a municipal public corporation organized under the laws of the State of Alabama, and is a local government entity." *Id.* at ¶ 17. Hamilton, in his role as an employee of the Hospital, is alleged to have assisted in the conduct of a study of the Clinic by the Hospital. *Id.* at ¶ 32(b). At the conclusion of that study, "with the assistance [of] others," Hamilton is alleged to have prepared two documents "for presentation to the City Council" as follows: (1) "[a]n 'evaluation and analysis' of the City of Huntsville Health Services;" and (2) "[a] proposal by Huntsville Hospital to assume

76

overall management of the City of Huntsville Health Care System." *Id.* at ¶ 33. Bodie states

in her brief that "*but for* Hamilton's participation in the preparation of one or more proposals

for Huntsville Hospital to assume the overall management of the City Health Care System

. . . , the City Council could not have accepted said proposal, or either of them, which

deprived plaintiff of her property right in her employment." *Plaintiff's Brief* at 14 (emphasis

in original). More than two years after Hamilton allegedly participated in preparation of the

proposal, the City allegedly did contract operation of the Clinic services to the Hospital. *Id.*

at ¶ 45.

Under the analysis in Section III.E.1.b, *supra,* Hamilton is entitled to qualified

immunity from personal liability for his actions as alleged in the amended complaint.

Construing the facts in a light most favorable to Bodie, she does not allege, and the court

can not infer, that Hamilton acted outside of the discretionary function of his position or that

he violated "clearly established law." *Ex parte Birmingham*, 624 So. 2d at 1021. In fact, as

in Count Five, Bodie does not allege a cognizable claim at all. Therefore, Count Six is due

to be dismissed because Hamilton is entitled to qualified immunity from personal liability

for his actions as an employee of a "local government entity" and Bodie does not state a

claim upon which relief can be granted when she alleges trespass to her job. This claim is,

in fact, utterly frivolous.

## G.   Count Seven.

In Count Seven of her amended complaint, which is styled "Trespass to Personal

Property," Bodie also alleges that she had "a property interest in her City employment."

*Complaint* at 17 (¶ 79). She further alleges that Thornton "trespassed to and materially

77

interfered with [her] property right in her employment, by covertly adding [her] employer as additional insured on [her] personal liability insurance policy." *Id.* at 17 (¶ 81). Finally, she alleges that "Thornton acted in wanton disregard of [her] rights and with reckless indifference to the consequences of his respective behavior." *Id.* at 17 (¶ 82). In Count Seven, therefore—as in Counts Five and Six—Bodie is making an individual capacity claim for trespass to her "property right in her employment."

The defendant in Count Seven, Thornton, is allegedly "an officer and/or employee" of Wilde, Thornton, a private insurance agency. *Id.* at ¶¶ 19-21. According to the factual allegations in the amended complaint, in 1984, Thornton sold Bodie a professional liability insurance policy, renewable annually and underwritten by St. Paul Insurance Company. *Id.* at ¶¶ 21-22. Bodie renewed her policy with Thornton each year. *Id.* at ¶ 23. Then, on or about April 16, 1987, Fitzpatrick, a former defendant in this lawsuit and the Risk Manager for the City, "ordered [Bodie] to bring her professional liability insurance policy to her City Clinic workplace for his inspection, [where he] inspected and photocopied [her] policy." *Id.* at ¶ 24. Bodie alleges that "Fitzpatrick and/or another named Defendant convinced Thornton to add an endorsement to [her] personal liability policy, naming the City of Huntsville as an additional insured on [her] policy." *Id.* at ¶ 25. Subsequently, Thornton allegedly added the endorsement, which, according to Bodie, "impair[ed] the $4,000,000 value of the policy." *Id.* at ¶ 26.

Bodie does not allege that Thornton actually took possession of her written policy agreement; instead, the amended complaint states as follows:

78

On or about October 31, 1987, having discovered the unauthorized endorsement on her policy, Plaintiff wrote a letter to Thornton, requesting that Thornton honor her right to the exclusive possession of, and confidentiality regarding, her personal insurance policy.

Upon receipt of Plaintiff's letter, and notwithstanding her request for confidentiality regarding her personal policy, Thornton discussed Plaintiff's policy with Fitzpatrick and/or another named Defendant.

On November 3, 1987, Fitzpatrick and Hall appeared at Plaintiff's City Clinic workplace and attempted to persuade Plaintiff to give her consent to the City of Huntsville as an additional insured on her personal liability policy. When Plaintiff refused to give her consent, Fitzpatrick and Hall threatened Plaintiff that her continued City employment was contingent upon her consent to the City as additional insured on her personal policy.

*Complaint* at ¶¶ 27-29.

According to the amended complaint, on November 5, 1987, "Hall ordered [Bodie] to leave her City Clinic workplace to attend a meeting at the offices of [Wikle, Thornton]." *Id.* at ¶ 30. At that meeting, Thornton attempted to persuade her to increase her policy limits to $5,000,000, and to consent to adding the City as additional insured. *Id.* ¶ 30(a). Hall and Fitzpatrick then allegedly "threatened [her] that her continued City employment was contingent upon her consent to the City as additional insured on her policy." *Id.* at ¶¶ 30(d)-(e). Bodie claims that when she asked Fitzpatrick to put this "contingency" in writing, "Fitzpatrick, Hall and Thornton jumped up their chairs [sic] and stormed out of the room." Id. at ¶ 30(f). Bodie makes no other factual allegations about Thornton.

79

On August 27, 1997, Thornton moved this court to dismiss this lawsuit against him.[41]
That motion is due to be granted because Bodie's claim for trespass to her "property right
in employment" is no more valid against Thornton than it is against the City Councilmen in
Count Five, Hamilton in Count Six, or any other defendants;[42] "employment" is simply not
the type of possessory interest that is protected by the tort of trespass in Alabama.

Alabama courts have recognized claims for wrongful retention of an insurance policy
where the defendant wrongfully withholds possession of the written policy from the insured.
*See Hamilton v. Hamilton*, 51 So. 2d 13 (1951) (following the national trend by recognizing
conversion of an insurance policy as a cognizable claim); *see also Williams v. Prudential
Ins. Co. of Am.*, 470 So. 2d 1200 (Ala. 1985) (reaffirming *Hamilton*, but holding that an
insurance policy which has lapsed cannot be the subject of conversion because it no longer
has value). Most recently, in *Gauntt v. United Insurance Company of America*, an Alabama
federal district court considered an insurer's argument that the retention of an insurance
policy by its sales manager could not constitute conversion because, even without the
written policy, the insured still retained all the rights associated with the policy. 853 F. Supp.
1382, 1384-85 (M.D. Ala. 1994). The court cited Alabama's statutory definition of "insurance
policy" and decided that the written policy was the insured's best evidence of her contract

---

[41] On September 2, 1997, Bodie filed an "Application to Clerk for Entry of Default and Supporting Affidavit"
claiming that Thornton had not timely filed an answer to her amended complaint or that he had not filed "a pre-
answer defense." However, Thornton's motion to dismiss was filed on August 27, 1997, within thirty days after
Bodie amended her complaint, as required by the court's order, entered June 27, 1997. Furthermore, Thornton's
motion to dismiss was pending at the time Bodie filed her application for default. Therefore, Bodie's application
for default is due to be, and shall by separate order be, denied.

[42] Unlike the City Councilmen, Hamilton and other defendants, Thornton is not entitled to qualified
immunity from personal liability because, according to the amended complaint, he is not a government official.

rights. *Id.* at 1385. By wrongfully retaining the written policy, the insured was denied the ability to know her rights under the policy, and "[t]his denial is, in and of itself, a violation of [her] rights." *Id.* Therefore, according to that court, the plaintiff stated a valid cause of action for conversion. *Id.*

In the present case, Bodie has not claimed that Thornton trespassed upon her possession of an insurance policy.[43] *See Complaint* at 17 (¶ 81). Even if she had, however, Bodie has not alleged facts that would support such a claim. Unlike the plaintiff in *Gauntt*, Bodie does not allege and her allegations do not in any way give rise to an inference that Thornton ever wrongfully retained possession of her written policy; she alleges only that Thornton changed the terms of her policy. Accordingly, Count Seven of the amended complaint is due to be dismissed for failure to state a claim upon which relief can be granted. This claim is frivolous.

## H.     **Counts Eight and Nine.**

In Count Eight of her amended complaint, titled "Trespass to Personal Property," Bodie again alleges that she had "a property interest in her City employment." *Complaint* at 18 (¶¶ 85). Bodie alleges that Hall "trespassed to and materially interfered with [her] property right in her employment, causing her to be subjected to the deprivation of said property." *Id.* at 18 (¶¶ 87). She also alleges that "Hall acted in wanton disregard of [her] rights and with reckless indifference to the consequences of his respective behavior." *Id.* at 18 (¶ 88). Count Eight is therefore similar to Counts Five, Six and Seven in that it involves

---

[43] As stated above, Bodie alleges that Thornton "trespassed to and materially interfered with [her] property right in her employment, by covertly adding [her] employer as additional insured on [her] personal liability insurance policy." *Complaint* at 17 (¶ 81).

a state law tort claim for trespass to personal property. Count Nine is identical to Count

Eight, except that Bodie names Perry as the defendant.

In her amended complaint, Bodie alleges that Hall, the Director of the City's

Department of Risk Management,[44] attended the November 5, 1987, meeting at the offices

of Wikle, Thornton and that he and Fitzpatrick allegedly "threatened" Bodie that her

continued employment was contingent upon her consent to adding the City as an additional

insured on her personal liability insurance policy. *Id.* at ¶ 30(d). According to the amended

complaint, Hall then requested that the Hospital perform "an in-depth study of the City

Clinic and health services provided to inmates at the City Jail." *Id.* at ¶ 31. In April of 1988,

Bodie prepared a "comprehensive report on the total operations of the City Employee

Health Clinic," which Hall had allegedly ordered. *Id.* at ¶ 32(a). Bodie then alleges:

> On October 12, 1988, after an incident with [an] unsupervised inmate, . . .
> following the procedure set out in the Employee Handbook, [she] initiated a
> grievance by sending a written request to Hall, asking for prompt action to
> provide [her] with a safe work environment.

> On October 14, 1988, having received no response to her request, Plaintiff
> telephoned Hall, who yelled so loudly over the phone that everyone in the
> room with Plaintiff could, *and did*, hear Hall order Plaintiff that "you will keep
> all doors to the building unlocked while you are at the Clinic," and when
> Plaintiff reminded him that she had been threatened by an inmate that was
> due to be released the next day, Hall's response was "If you are so scared,
> you can close the Clinic and use up all of your vacation time."

> On or about November 7, 1988, Hall responded, in writing, to Plaintiff's
> grievance, thanking her "for sharing" with him her "concerns regarding [her]
> safety" and stating that he had initiated a study by Huntsville Hospital "to
> determine alternate operational approaches which may alleviate [Plaintiff's]

---

[44] Bodie alleges that Hall served in the position of Director of Risk Management until about April 1, 1989.
*Complaint* at ¶ 15. The last event involving Hall alleged in the amended complaint occurred in November of 1988.
*Id.* at ¶ 39.

concerns for safety," and assured her that a course of action would be determined after he received the results of said study.

When Hall refused to take action, Plaintiff properly appealed her grievance to the City Personnel Committee.

Complaint at ¶¶ 36-39 (emphasis in original). According to the amended complaint, following the Personnel Committee's recommendation, "Hall authorized [Bodie] to secure outside doors when necessary for safety." *Id.* at ¶ 39(a).

In her brief in response to Hall's motion to dismiss, Bodie argues that she states a cognizable claim because:

*but for* Hall's initiation of a study by Huntsville Hospital to determine alternate operational approaches which may alleviate [Bodie's] concerns for safety . . . which resulted in proposals [sic] Huntsville Hospital to assume the overall management of the City of Huntsville Health Care System . . . , the City Council could not have accepted said proposal, or either of them, which deprived plaintiff of her right in her employment.

*Plaintiff's Brief* at 14 (emphasis in original).

With regard to Perry, Bodie alleges that as the Director of Human Resources for the City, Perry presented a proposal to the City Council on January 4, 1990, for the Hospital to assume management of the City health care services, including the Clinic and a nurse position at the City jail. *Id.* at ¶¶ 16, 44. Bodie also alleges that at the next week's meeting of the City Council, Perry presented and the City Council adopted a plan to contract with the Hospital for management of the City health care system, including the Clinic, but excluding the jail. *Id.* at ¶ 45. Bodie makes no other factual allegations about Perry.

In her brief in response to Perry's motion to dismiss, Bodie argues that she states a cognizable claim because:

83

> *but for* Perry's presentation to the City Council of proposals for Huntsville Hospital to assume overall management of the City Health Care System, including the City Clinic, on January 4, 1990, and again on January 11, 1990, . . . the City Council could not have accepted said proposal, or either of them, which deprived plaintiff of her property right in her employment.

*Plaintiff's Brief* at 14 (emphasis in original).

Bodie does not state whether her claims in Counts Eight and Nine are against Hall and Perry in their official capacities as City officials or against them in their individual capacity. As noted earlier, any claims against Hall or Perry in their official capacities would actually be against the governmental entity for which they act, the City. *Monell*, 98 S. Ct. at 2035, n.5 (1978). On the other hand, if Bodie sues Hall or Perry in their individual capacities, as discussed in Section III.E.1.b, *supra*, they are entitled to qualified immunity under the law of Alabama from a state tort action unless they violated "clearly established law."

Construing all the allegations in a light most favorable to Bodie, she does not allege facts to support a contention that Hall or Perry violated any "clearly established law." As with her claims for trespass to personal property, Bodie simply does not state any cognizable claim against Hall or Perry.[45] Therefore, Counts Eight and Nine are due to be dismissed because Hall and Perry are entitled to qualified immunity from any personal liability for his actions as City officials and Bodie does not state a claim upon which relief can be granted when she alleges trespass to her job against Hall and Perry in either their official or individual capacities. This claim is frivolous.

---

[45] *See* Section III.E.2, *supra*.

84

## I.   Count Ten.

In Count Ten of her amended complaint, titled "Wantonness," Bodie again alleges that she had "a property interest in her City employment." *Complaint* at 19 (¶ 97). She states that Hettinger "trespassed to and materially interfered with [her] property right in her employment, causing her to be subjected to the deprivation of said property." *Id.* at 19 (¶ 99). As Mayor of the City, Bodie claims, Hettinger "was responsible for total administration and proper functioning of the City on a day-to-day basis, and was responsible for the general supervision of all employees who work for the City, yet Hettinger ratified the conduct of his subordinates." *Id.* at 19 (¶ 100); *see also id.* at ¶ 12. Bodie also alleges that "Hettinger's deliberate indifference toward the unsafe working conditions he allowed to persist at the City Employee Health Clinic, caused [her] to be subjected to the deprivation of her property interest in her City employment." *Id.* at 20 (¶ 101). Finally, she alleges that "Hettinger acted in wanton disregard of [her] rights and with reckless indifference to the consequences of his respective behavior." *Id.* at 20 (¶ 102). Bodie makes only one specific factual allegation involving Hettinger; she asserts that, on October 3, 1988, Councilwoman Jane Maybry "wrote a memo to the Mayor" regarding unsafe working conditions at the Clinic. *Id.* at ¶ 35. Bodie then states that "Nothing was done." *Id.* It is therefore unclear whether Count Ten is an official capacity claim or an individual capacity claim, and pursuant to what legal theory the claim is brought.[46]

---

[46] On September 5, 1997, Bodie filed an "Application to Clerk for Entry of Default and supporting Affidavit," claiming that Hettinger did not timely file "an answer or pre-answer defense." On September 9, 1997, Hettinger filed a motion to dismiss. Two days later, Hettinger filed a motion to transfer Bodie's application for default against him to this court "for hearing and review," and he filed an opposition to Bodie's application for default against him. On September 24, 1997, Bodie filed a motion to strike Hettinger's motion to dismiss, claiming the motion to dismiss was not timely.

First, any individual capacity claim against Hettinger for a constitutional violation is due to be dismissed. As discussed in Section III.E.1.b, *supra*, in the Eleventh Circuit, plaintiffs are required to meet a "heightened pleading standard" for § 1983 actions against government officials in their individual capacities because the court must determine whether the defendant's actions violated a "clearly established law." *See GJR Investments*, 132 F. 3d at 1367. In its consideration of Count Ten, this court, just like the court in *GJR Investments*, need not reach the question of whether Bodie alleges a violation of a "clearly established law" because she "simply fails to state [an individual capacity constitutional] claim, even without the additional hurdle of the heightened pleading standard." *Id.* Even if Bodie does attempt to state an individual capacity claim pursuant to § 1983, then she clearly fails to state it with the requisite specificity. Finally, in order to maintain a § 1983 claim against an individual government official, Bodie must allege a violation of "clearly established law," and the only constitutional violation that Bodie has successfully asserted against any defendant is a claim of retaliation by the City for violation of her right to free speech. Construing all the factual allegations in a light most favorable to Bodie, she has not alleged any set of facts by which Hettinger has violated her right to free speech. Therefore, any individual capacity claim against Hettinger for a constitutional violation is due to be dismissed.

---

It does appear that Hettinger's motion to dismiss was not timely filed pursuant to the court's order entered June 27, 1997, allowing thirty days from the time Bodie amended her complaint for defendants to file motions to dismiss. However, Hettinger did submit his motion to dismiss to the court's chambers and it appears that he served it upon Bodie within the proscribed time period. Accordingly, the court finds no prejudice to Bodie, and her application and the motion to strike will, by separate order, be denied.

Second, any official capacity claim against Hettinger for a constitutional violation is also due to be dismissed. As discussed earlier, an official capacity claim against Hettinger is really a claim against the City. If Bodie alleges a constitutional violation against Hettinger in his official capacity, as discussed in Section III.D.3, *supra*, the City cannot be held liable under § 1983 on a theory of respondeat superior. *Monell*, 436 U.S. at 691; *Hearn*, 688 F.2d at 1334. The City is liable for the actions of Hettinger under § 1983 only if the alleged constitutional deprivation occurred pursuant to an established custom or policy of the municipality. *Monell*, 436 U.S. at 691-94; *Gilmere*, 774 F.2d at 1503 ; *Hearn*, 688 F.2d at 1334. Bodie has alleged no such custom or policy.

Bodie might establish the existence of a policy or custom sufficient to impose § 1983 liability on the City by showing that Hettinger had final decisionmaking authority with regard to the alleged constitutional violation. *Pembaur*, 475 U.S. 469. However, in this count, Bodie complains that Hettinger allowed the alleged "unsafe working conditions to persist" at the Clinic, causing a "deprivation of her property interest in her City employment." She does not allege that Hettinger had final decisionmaking authority over the operations of the Clinic.[47] Even if alleged, such a count would make essentially the same claim against Hettinger that Count One makes against the City Councilmen in their official capacities. See *Complaint* at 11 (¶¶ 47-48). Under the analysis of Section III.A, *supra*, a claim for "deprivation of a property interest in City employment" does not state a cognizable constitutional claim. Furthermore, in Sections III.A through III.D, *supra*, this court has

---

[47] As stated above, Bodie does allege that Hettinger "was responsible for total administration and proper functioning of the City on a day-to-day basis, and was responsible for the general supervision of all employees who work for the City, yet Hettinger ratified the conduct of his subordinates." *Id.* at 19 (¶ 100).

already considered every conceivable constitutional claim against the City under the facts alleged in the amended complaint, and Bodie can state only one—a claim of retaliation for exercising her right to free speech. Construing the factual allegations against Hettinger in Count Ten in a light most favorable to Bodie, she has not stated a claim for any constitutional violations involving Hettinger. Therefore, any official capacity claim against Hettinger pursuant to § 1983 in Count Ten is due to be dismissed.

Third, any individual capacity claim against Hettinger for a state law violation is also due to be dismissed. As discussed in Section III.E.1.b, *supra*, city officials in Alabama are immune from personal liability for conduct within the discretionary function of their position. Under the law of Alabama, a mayor is generally empowered with the administrative functions of the city; the Code of Alabama provides for the duties and powers of the mayor as follows:

> All executive powers of the city shall be vested in the mayor and the mayor shall be the head of the executive and administrative branches of the city government. He may attend council meetings but may not vote in its proceedings and he shall have the power and duties herein conferred. The mayor shall be responsible for the proper administration of all affairs of the city, and, except as otherwise provided herein, he shall have the power and shall be required to: (1) Enforce all laws and ordinances; (2) Appoint and remove, when necessary for the good of the service, all officers and employees of the city except those appointed by the council. . . . ; (3) Appoint the members of the industrial development authority and housing board. . . . ; (4) Exercise administrative supervision and control over all departments created by this chapter or by law or hereafter created by the council, except those otherwise given independent status under this chapter; (5) Keep the council fully advised as to the financial conditions and needs of the city; prepare and submit the budget annually to the council and be responsible for its administration after its adoption; prepare and submit, as of the end of the fiscal year, a complete report on the financial and administrative activities of the city for such year; (6) Recommend to the council such actions as he may deem desirable; (7) Prepare and submit to the council such reports as may

88

> be required of him; (8) Perform such other duties as may be prescribed by
> this chapter; and (9) Fix the salaries or compensation of all officers and
> employees of the city who are appointable by the mayor, subject, however,
> to the provisions of any merit law applicable to the city.

Ala. Code § 11-43C-37; *see also id.* at § 11-43C-38 through § 11-43C-93 (other statutory powers and duties of the mayor). In Count Ten, Bodie alleges that Hettinger "was responsible for total administration and proper functioning of the City" and "was responsible for the general supervision of all employees who work for the City." *Complaint* at 19 (¶ 100). Construing all the factual allegations involving Hettinger in a light most favorable to Bodie, she has not made any allegation that Hettinger acted outside the discretionary function of his position as mayor of the City. Therefore, Hettinger is entitled to immunity from personal liability for any state law claims against him.

Finally, any official capacity claim or an individual capacity claim against Hettinger under any other legal theory must be dismissed. The liberal pleading standard in the Federal Rules of Civil Procedure requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the pleading "must give the opposing parties fair notice of the claims and the basis or grounds for it so that the Defendants will at least be notified as to which of their personal actions give rise to the claim upon which the Complaint is based." *Edison v. Areans,* 155 F.D.R. 215, 220 (M.D. Fla. 1994). Furthermore, "[c]onclusory allegations are not acceptable when no set of facts are alleged to support the conclusion." *Ware v. Barr,* 883 F. Supp. 654, 656 (M.D. Fla. 1995); *see also Fleming v. Lind-Waldock & Co.,* 922 F.2d 20, 23

(1st Cir. 1990) ("The pleadings are not sufficient where plaintiff rests on . . . unsubstantiated conclusions.").

In this case, the only factual allegation involving Hettinger is the assertion that he received a memo regarding the unsafe working conditions at the Clinic and "[n]othing was done."[48] This factual allegation, even if true, does not support a viable claim against Hettinger in his official or unofficial capacity. Therefore, Count Ten is due to be dismissed for failure to plead "with sufficient intelligibility for a court or opposing party to understand whether a valid claim is alleged or if so what it is." *Clark v. Sierra*, 837 F. Supp. 1179, 1181 (M.D. Fla. 1993) (quoting *Old Time Enters., Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989).

Furthermore, after six years of litigation and four complaints, this court is satisfied that Bodie has been afforded ample opportunity to state her claims, if any, against Hettinger. Therefore, Count Ten should be dismissed with prejudice. *See Welch v. Laney*, 57 F.3d 1004, 1005 (11th Cir. 1995) (district court properly dismissed plaintiff's claim with prejudice, where the court had allowed employee to amend her complaint twice in order to state claim on which relief could be granted, and employee failed to do so); *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985) (although dismissal of a case for failure to comply with the pleading rules is a severe sanction, its imposition is justified when a party chooses to disregard the sound and proper directions of the district court). In the words of the late Judge Irving L. Goldberg of the Fifth Circuit Court of Appeals: "All good things must come

---

[48] Although Bodie also alleges that Hettinger "ratified the conduct of his subordinates," as discussed in Sections III.D through III.H, *supra*, she has failed to state a viable claim against anyone who might have been a subordinate of the mayor.

to an end, even litigation." *Southern Rambler Sales, Inc. v. American Motors Corp.*, 375 F.2d 932, 935 (5th Cir. 1967), *cert. denied*, 389 U.S. 832 (1967). This claim against Mayor Hettinger is frivolous.

## IV.   CONCLUSION.

After a meticulous examination of the amended complaint in this lawsuit, construing all the factual allegations in a light most favorable to the plaintiff and considering all conceivable legal theories reasonably supported by the alleged facts, Bodie has stated only one viable claim. In Count Two, she has properly plead that the City of Huntsville retaliated against her for her speech on a matter of public interest. However, even this claim is limited by the two-year statute of limitations applicable to § 1983, precluding claims arising from events that occurred on or before January 10, 1990. The only event alleged to occur within the limitations period is the meeting of the City Council on January 11, 1990. All other claims against all other defendants are due to be, and by separate order entered contemporaneously herewith shall be, dismissed with prejudice.

Done, this ____ *16th* ____ of October, 1998.

_____

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

91