UNITED STATES DISTRICT COURT   FILED

NORTHERN DISTRICT OF ALABAMA 99 SEP 22 PM 4: 25

NORTHEASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CORDELIA ANN BODIE, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-92-N-103-NE |
| | ] |
| CITY OF HUNTSVILLE, | ] |
| | ] |
| Defendant(s). | ] |

ENTERED

SEP 2 2 1999

## Memorandum of Opinion

### I.    Introduction.

The court has for consideration defendant City of Huntsville's Motion for Summary

Judgment filed June 15, 1999.[1]   The issues have been briefed by both parties and are now

ripe for decision.

Ms. Bodie first filed this action on January 10, 1992.   The court dismissed it as

frivolous in April of 1992, and the Eleventh Circuit affirmed. *Bodie v. City of Huntsville*, 987

F.2d 774 (11th Cir. 1993).   However, in October of 1993, the Supreme Court, in light of its

then new decision in *Leatherman v. Tarrant County Narcotics Intelligence and

Coordination Unit*, 507 U.S. 163 (1993), vacated and remanded the case to the Eleventh

Circuit for reconsideration under the *Leatherman* standard. 510 U.S. 801 (1993).   In June of

1997, the Eleventh Circuit remanded with instructions to the district court to reconsider the

---

[1]In a related matter, the plaintiff has moved the court to strike what she claims are the defendant's misrepresentation of facts, as well as defendant's exhibits X, Y, and Z. The defendant has moved to strike certain exhibits from the plaintiff's evidence. Each party has adequately responded to the other's motion. The court will consider these motions contemporaneously with the motion for summary judgment, and will disregard any portions of the facts and exhibits which are not properly before the court on summary judgment.

claims. Now, more than seven and one-half years after it was filed, innumerable costs in terms of attorney and party time and effort, and untold pain and stress, the court will grant the remaining defendant's motion for summary judgment.

The City of Huntsville (City) employed Bodie as a Registered Nurse at the City Health Clinic from May 19, 1976, until September 30, 1990. Her duties included, but were not limited to evaluating employee health complaints, providing first aid in emergencies, screening employee injuries and health complaints, conducting health related screenings and immunizations, counseling, and performing tests on potential city employees. In addition, in 1983 or 1984 Ms. Bodie began treating city jail inmates for various health related problems.

In 1988, Huntsville Hospital ("Hospital") commenced a comprehensive study to examine the health care services provided by the Clinic and to determine effective alternative approaches to the current clinic procedures. Bodie participated in the study, at the direction of Personnel Director Larry Hall (Hall), by preparing a comprehensive report. During the course of the study, Bodie became concerned that sanitation and employee safety had deteriorated at the clinic. While the evidence does not make it patently clear, it appears that from October of 1988 to January of 1989, Ms. Bodie had numerous communications with City officials regarding her complaints. It appears that she submitted a grievance on November 7, 1988, appealed the grievance to the Personnel Committee, and appealed again to the City Council. According to the grievance appeal form, Ms. Bodie's grievance was "unsafe working conditions."

2

On January 19, 1989, the City Council heard Bodie's grievance. At the meeting, Ms. Bodie expressed her fear of being left alone in the clinic and her dismay at the conditions and lack of janitorial staff at the clinic. On January 20, 1989, Ms. Bodie's comments were printed in the Huntsville Times. After the meeting, the Council directed the administration to review Bodie's concerns and provide a report.  On January 26, 1989, Administrative Assistant Rick Liles wrote a memorandum to the Council stating: (a) he had personally toured the facility; (b) building maintenance personnel had thoroughly cleaned the building; (c) a fire inspection was done; (d) a private duty security person was assigned to the clinic; (e) three city officials, including a City Councilman had toured the facility to explore long range renovation needs; (f) pest control was sent to the building; (g)a new policy and procedure had been developed by the Huntsville Police Department (HPD)concerning the transportation and custody of inmates in route and while being treated at the clinic; and, (h) effective January 30, 1989, the Special Investigation Unit of the HPD would be moved to the clinic.

On the same day as the hearing of her grievance, Canty Cooper presented each Council Member with a report from Huntsville Hospital entitled "City of Huntsville Health Services Evaluation and Analysis."  Over the next several months, Director of Human Resources Charles Perry met with Huntsville Hospital officials to discuss the possibility of the Hospital managing the clinic.  The agenda for the January 11, 1990, Council meeting included a "discussion of Huntsville Hospital proposal to assume overall management of the City's Healthcare system. At the meeting, the City Council was presented with four "proposal considerations" by Huntsville Hospital to manage the City Healthcare System.

3

Options One and Two would allow Plaintiff to remain in her City Nurse position. Option Three would allow Huntsville Hospital to be responsible for staffing, operation, and management of the City Health System with the exception of a full-time city-employed City Jail nurse. Option Four was a "complete contract" granting the Hospital total management and operation of the City Health System. Before adopting a proposal, the Council explicitly addressed Ms. Bodie's grievance in relation to the different options. According to the proceedings of the meeting, because Option Three would relocate Ms. Bodie as a full time nurse in the remodeled area of the City Jail, her grievance would be settled. Furthermore, before a vote was taken, questions were raised regarding the contract period, and whether the contract had a "built-in safety factor." According to the minutes, Perry replied that the proposal was "written that way, and could be a one-year contract, at least on the first phase." Eventually, at the January 11, 1990 meeting Option Three was unanimously accepted and adopted. However, the specifics of creating or drawing up a formal agreement or contract with the Hospital were not discussed. According to Ms. Bodie, the retaliatory act she allegedly suffered was the loss of her job that occurred as a result of this vote.

In the months following the meeting, Bodie's duties, responsibilities, salary, benefits, location, and job description never changed. During this period, Bodie always believed that regardless of the Huntsville Hospital situation she would remain a City employee. In February of 1990, Bodie found out that she had been accepted to the University of Alabama School of Law. As a result, she sent the University a deposit to reserve her place in the

4

upcoming class.[2]  In March and May of 1990, Perry presented Bodie with three job descriptions for review and comment. In response, Bodie expressed concern about the description, and requested that it be sent for a legal department opinion.  The end result was that the proposed description was never implemented.

According to Bodie, the job description that she was given to review, and that was never implemented, was the triggering event that led to her resignation.  In her resignation letter, she stated that she had carefully thought over her decision, and that if the City desired to continue the in-house operation of the Employee Health Clinic she would be "pleased" to provide orientation for her successor.  Bodie's leave began July 31, 1990, although her effective resignation date was September 30, 1990.  In August of 1990, Bodie moved to Tuscaloosa, Alabama and began law school.  Back in Huntsville, the negotiations between the Hospital and the City never culminated in a final contract.  Huntsville Hospital never assumed overall management of the City Healthcare system.

## II.    Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[2]It is undisputed that Bodie applied to law school in the Fall of 1989.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*,

6

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**III.     Discussion.**

      **A.     Municipal Policy or Custom.**

      A plaintiff seeking to impose liability on a municipality under § 1983 must identify

a municipal "policy" or "custom" that caused the plaintiff's injury. *Monell v. New York City*

*Dept. of Social Services*, 436 U.S. 658, 694 (1978). The classic examples of "policy" include

the implementation of a policy statement, ordinance, regulation, or decision that was

officially adopted and promulgated by a municipal body's officers. *Id.* at 690; *See also*

*Pembaur v. Cincinnati* 475 U.S. 469, 480 (1986) (defining official policy as "formal rules or

understanding, -often committed to writing- that are intended to, and do, establish fixed

plans of action to be followed under similar circumstances consistently followed over

time"). The official policy requirement ensures that a municipality is not liable unless the

deprivation results from the decisions of a duly constituted legislative body, or of those

officials whose acts may fairly be said to be those of the municipality. *Monell* 463 U.S. at

694. In addition, a policy may result from a government entity choosing a course of action

tailored to a particular decision, and not intended to control decisions in later situations.

*Pembaur* 475 U.S. at 481. If a decision to adopt a particular course of action is properly

made by that government's authorized decisionmakers, it represents an act of official

government "policy" as that term is commonly understood[3]. *Id.* Additionally, an act

performed pursuant to a "custom" that has not been formally approved by an appropriate

---

    [3]In *Pembaur*, the Court agreed that the definition of "policy" for § 1983 purposes is consistent with the common definition of the word. For example, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1754 (1981) defines "policy" as a specific decision or set of decisions designed to carry out such a chosen course of action. Another definition is "a course of action adopted and pursued by a government, party, ruler, statesman, etc." VII OXFORD ENGLISH DICTIONARY 1071 (1933). *See Pembaur* 475 U.S. 469, 481 n.9 (1986).

decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Monnell* 436 U.S. at 690-1.

Ms. Bodie alleges that the retaliatory act was the City Council depriving her of her job by the vote on January 11, 1990. However, for § 1983 purposes, that "vote" was not a municipal policy. While a proposal or option was adopted, there was no implementation of a policy statement, ordinance, regulation, or decision. In fact, nothing between Huntsville Hospital and the City was ever finalized and put into a written contract. According to five City Councilmen, the vote did not authorize the Mayor to enter into a contract, but merely indicated that the Council might look favorably on a contract with those terms in the future. (Perry Aff.; Kling Aff.; Kaufmann Aff.; Putnam Aff.; Showers Aff.). In addition, City Councilman Kaufmann stated that the vote was taken so that the Administration would not waste its time on something that the City Council was not interested in doing. (Kaufmann Aff. p.3).

Moreover, the City Council's actions do not fit within the common definition of "policy." The adoption of the proposal was not a decision to carry out a chosen course of action. First, the course of action, the Hospital contract, was never carried out. In addition, every City Councilman stated that the vote was essentially an approval of a potential relationship between the City and the Hospital. For example, Councilman Showers stated, "[i]n voting for option 3 I understood that a contract with all the details would be presented to the City Council for a vote at a later date and that the City was not contracting with Huntsville Hospital at that particular time." Likewise, Councilman Kaufman said, "[i]n voting for option 3 the City Council was voting for a concept and not authorizing a

9

contract." Finally, the minutes of the meeting show that the proposal itself was subject to being changed[4].

In addition, Alabama law precludes the City Council's decision from constituting a formal policy with the Hospital. Alabama Code § 11-47-5 states, "[c]ontracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town. . . ." Here, there was not a signed writing or ordinance authorizing the execution of a contract, nor was there a document executed by Mayor Steve Hettinger.

A straw vote to adopt a proposal that concerns a potential contractual relationship currently being negotiated is not a sanctioned or ordered action of a municipal government. The courts would be inundated with § 1983 lawsuits if a potential cause of action existed every time a City Council supported a proposal to *negotiate* the outsourcing of government functions. Here, the City Council simply adopted a proposal for a potential contract with Huntsville Hospital. It is undisputed that at the time of the adoption, the negotiations were still being conducted. There is no evidence that any form of a final contract was ever in place. Moreover, it is undisputed that from the time of the vote until her resignation, Ms. Bodie's responsibilities, salary, benefits, location, and job description never changed. Accordingly, the City Council did not make an official or final decision

---

[4] There was a discussion concerning rewriting the proposal to change the potential contract with the Hospital to a one year contract.

concerning Ms. Bodie's occupational status. Thus, summary judgment is due to be granted.

## B. Final Authority.

For § 1983 purposes, "policy" may include a single edict, act, or decision by a municipal officer with final decisionmaking authority. *Pembaur*, 475 U.S. at 481-83. However, municipal liability is precluded unless the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *Id.*; *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Municipal liability attaches where –and only where– a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur,* 475 U.S. at 483(emphasis added); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In addition, the Eleventh Circuit has consistently recognized the principle that a municipal officer "does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *See Scala* 116 F.3d at 1401. Accordingly, even if the January 11, 1990 vote was considered a "policy," for § 1983 purposes, it must have been made by an entity with final decisionmaking authority.

Ms. Bodie alleges the retaliatory action was the City Council selecting the proposed option that would have transferred her position as City Nurse to a nurse position at the City Jail. The City of Huntsville has presented substantial evidence that transfers had to be approved by the Department Heads, the Director of Human Services, and the Mayor. *See* CITY OF HUNTSVILLE PERSONNEL POLICIES AND PROCEDURES MANUAL 9.5. In response, Ms.

11

Bodie has not demonstrated any evidence that this policy was not in effect, or not applicable to her.   Consequently, the Huntsville City Council was not the "final decisionmaker" as to Ms. Bodie's transfer.  Because the Huntsville City Council did not have the final authority to transfer the plaintiff, summary judgment is due to be granted

In addition, the proposal itself was subject to further review.  This is evidenced by the fact that negotiations persisted for several months after the meeting, and the fact that during the meeting itself, a city councilman asked about revising the proposal.  The statements of city officials clearly indicate the non-binding nature of the vote. Consequently, there was never a "deliberate" choice to follow a course of action because a final course of action was never implemented.  According to Perry, the vote was merely "an indication that the City Council would approve a contract with Huntsville Hospital containing the general terms of Option 3."  Councilman Wall stated the vote was not to enter into a contract, but rather to "give guidance to the Administration regarding terms that the City Council wanted to see in a contract that might be presented in the future." According to Councilman Kaufmann, "option three was presented to the City Council so that the Administration could *negotiate, draft, and present* a contract with Huntsville Hospital to the City Council with some reasonable chance that it would be authorized. . . ." Councilman Putnam stated that a contract "with all the details" would be presented to the City Council at a later date.  The foregoing evidence indicates that the proposal could be changed by any of the parties involved.  Accordingly, summary judgment is due to be granted.

### C.    Retaliation.

For Ms. Bodie to establish that an employment action has infringed upon a constitutional right, she must demonstrate that she has "suffered some sort of adverse employment action for exercising the right." *See McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). "Adverse employment action is broadly defined, and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *Id.*; *see also Goffer v. Marbury*, 956 F.2d. 1045, 1049 (11th Cir. 1992)(stating that the *Pickering v. Board of Education*, 391 U.S. 563, (1968), line of cases protects against not only discharge, but also "any adverse employment action taken by the employer that is likely to chill the exercise of constitutionally protected speech."). The Supreme Court has stated that the First Amendment even protects employees from "trivial" acts of retaliation. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 n.2 (1990). However, an employment action must affect a term or condition of employment, and is not adverse merely because the employee dislikes it or disagrees with it. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998).

While the standard for showing an "adverse employment action" is very low, there still must be some form of action. Ms. Bodie alleges that her "imminent transfer" from her position as City Nurse to a position of "jail nurse" was a demotion. However, the facts of this matter show that the only action taken was an adoption of a business relationship proposal in which negotiations between the affected parties were underway. Thus, the low standard of "trivial" can not be met. Although a transfer can be an "adverse employment action," the possibility or fear of transfer, by itself, cannot. *See e.g. McCabe* 12 F.3d at

13

1563. In *McCabe,* the plaintiff suffered an adverse employment action after she was transferred to a position two grades lower than her former position, her eligibility for salary increases was less in her new position, and her new position involved less responsibility and more menial tasks than her original position. *Id.* In contrast, Ms. Bodie's duties, responsibilities, salary, benefits, location, and job description remained the same from the time the proposal was approved until she resigned. Ms. Bodie has demonstrated no evidence to create a material issue of genuine fact that, during the period after the council vote she suffered an employment action that adversely affected the terms or conditions of her employment.     Ms. Bodie attempts to demonstrate that her "new" job description was an adverse employment action. However, once Ms. Bodie expressed concern regarding the *proposal* to change her job description, it was never implemented. Furthermore, it is undisputed that Charles Perry did not intend to transfer or relocate Ms. Bodie until he had the job description in place. When an employee was given a chance to have input about possible employment action, and after such input any potential changes were aborted, one cannot claim that they were subjected to "adverse" employment action.     Ms. Bodie's apprehension about what might happen *if* the Huntsville Hospital contract was entered into is not enough to survive summary judgment.

Ms. Bodie, citing to *Chardon v. Fernandez,* 454 U.S. 6 (1981), asserts that the decision to transfer her was essentially a demotion. In *Chardon,* the Court dismissed a § 1983 claim because the applicable statute of limitations had run. *Id.* at 8. For statute of limitations purposes, the court examined when the operative decision was made, and when notice was given. Here, the City Council did not make an operative decision, and as such,

14

it could not be communicated to Ms. Bodie. It is undisputed that a contract with Huntsville Hospital was never entered into, and Bodie's job description never changed. In response, Ms. Bodie has not demonstrated any evidence that an "operative" decision had been made to carry out the contract. Accordingly, Ms. Bodie has failed to demonstrate that the proposal affected her in such an adverse way as to create a material issue of fact to preclude summary judgment.

Alternatively, Ms. Bodie asserts that her resignation was a result of being constructively discharged. A successful constructive discharge claim requires the plaintiff to demonstrate that working conditions are so horrible that "a reasonable person in her position would have been compelled to resign." *Thomas v. Dillard Dep't. Stores, Inc.*, 116 F.3d 1432, 1433-34 (11th Cir. 1997). Ms. Bodie admits that her duties, responsibilities, salary, and location never changed from the time of the vote until she resigned. In addition, the evidence shows that Charles Perry actively sought Ms. Bodie's input on any potential work environment changes. In response to the defendant's evidence of the absence of intolerable conditions, Ms. Bodie has failed to demonstrate any material evidence of an unreasonable work environment.

Consequently, Bodie's constructive discharge claim apparently centers on the conditions of her work environment if the transfer was implemented. Even if a proposed transfer would be enough to create a change in work conditions, Ms. Bodie has not demonstrated that her working conditions would be so intolerable that a reasonable person in the same environment would have resigned. The minutes of the Council meeting clearly show that while discussing the proposal, the Council made a considerable effort to

15

incorporate a job for Ms. Bodie in the event that the plan came to fruition.   Unfortunately for Ms. Bodie, mere speculation and apprehension about a position that was neither created, nor adopted, is not enough to sustain a constructive discharge argument. Accordingly, the motion for summary judgment should be granted.

       **D.**    **Freedom of Speech.**

As set out above, Ms. Bodie's claim fails because (1)the city never adopted a "policy" for § 1983 purposes; (2) even if a policy had been adopted, it was not a "final decision" made by a decisionmaker with final authority, and; (3) Bodie has not suffered an adverse employment decision. However, assuming *arguendo* that there was a policy, it was made by a decisionmaker with final authority, and Bodie suffered an adverse employment action, she cannot make out a viable claim that she was punished for exercising her First Amendment rights.    A governmental entity cannot condition employment "on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 146 (1983). A claim by a public employee that he was punished for exercising his right to freedom of speech requires the court to conduct a four-part inquiry. *See Morgan v. Ford,* 6 F.3d 750, 753-54 (11th Cir. 1993); *Schalk v. Gallemore*, 906 F.2d 491, 495 (11th Cir. 1990). First, the court must decide whether the speech at issue pertains to a matter of public concern. Whether speech relates to a matter of public concern is a question of law, and is therefore readily susceptible to disposition on summary judgment. *Pearson v. Macon-Bibb County Hospital Authority*, 952 F.2d 1274, 1278 (11th Cir. 1992). If a matter of public concern is implicated, then the court must balance the interest of the employee in making the statement against the employer's

interest in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). If the preceding prerequisites are met, the speech is protected, and plaintiff must show her expression was a motivating factor in the detrimental employment decision. *Mount Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287 (1977). However, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *Id.*

### 1.    Public Concern Analysis.

A comment touching on a matter of public concern is usually related to any matter of political, social, or other concern to the community. *See Connick*, 461 U.S. at 147. However, the fact that a plaintiff worked for a governmental entity does not automatically convert employment related matters of a personal nature into matters of public concern. *See Ferrara v. Mills*, 781 F.2d. 1508, 1516 (11th Cir. 1986). An employee's speech is beyond the protection of the First Amendment when the employee is not speaking as a citizen, but rather as an employee upon matters of only personal interest. *Connick*, 461 U.S. at 147. This analysis takes into consideration whether the employee made an effort to communicate her concerns to the public and the employee's motivation for speaking out. *See Deremo v. Watkins*, 939 F.2d 908, 911 (11th Cir. 1991). Because summary judgment is not precluded by any factual questions about a person's subjective, internal motivation in speaking on these matters, the examination requires an analysis of the content, form, and context of a given statement, as revealed by the whole record. *See Pearson* 952 F.2d at 1278.

17

In *Pearson v. Macon-Bibb County Hospital*, the Eleventh Circuit addressed a First Amendment claim based upon the complaints of a hospital employee. 952 F.2d 1274 (11th Circuit 1992). The employee alleged that adverse employment action was taken against her after she made comments critical of the overall operating room cleanliness, and the assignment of cleaning responsibilities. *Id.* at 1278. Even though the court stated that the comments pertained to matters of "public significance," they were not afforded First Amendment protection. *Id.* The court, looking primarily at the context in which the comments were made, considered the statements to primarily pertain to the assignment of cleaning responsibilities and the allocation of blame among the nurses responsible for carrying out the general cleaning duties. In addition, the court noted that the complaints were conveyed in light of a recent reprimand which the plaintiff believed unfairly allocated the blame for the unsanitary conditions upon her. Thus, in light of the context in which they were brought, the comments were considered to concern an issue of personal interest to the plaintiff. Consequently, the comments regarding cleanliness were described as "incident" to the other remarks. Thus, they were not afforded First Amendment protection. *Id.*

In the present case, Ms. Bodie alleges that the proposal was approved in retaliation for her not allowing the City of Huntsville to be an additional named insured on her professional liability policy, and for her comments and formal grievance concerning the unsanitary and unsafe conditions at the city health clinic. The comments regarding the insurance policy relate to a matter of personal interest affecting only Ms. Bodie. In addition, Ms. Bodie does not even address the speech concerning the insurance policy

situation in her responsive submission before the court.  Accordingly, a First Amendment claim based upon the refusal to allow the city to be a named insured is barred by the "public concern" standard.

In contrast, unsanitary and unsafe conditions at a city health clinic can be a matter of "public importance."  However, in light of *Pearson*, whether the statements regarding the conditions relate to a matter of public concern depends primarily upon the context in which Ms. Bodie raised her complaints.[5]  According to the City of Huntsville, Bodie's grievance based on the safety of the city clinic was filed in light of a safety issue that "probably just affected her."  In addition, the City asserts that the complaints concerning inadequate janitorial service were merely incidental to Bodie's complaints that she had to clean the clinic herself.  While the plaintiff's responsive brief fails to substantively address the context in which the complaints were brought, or how her situation is different from that of the nurse in *Pearson*, the record indicates that Ms. Bodie's comments regarding the unsanitary conditions of the clinic are a matter of public concern.[6]

Unsanitary medical conditions at a city health clinic concern a matter of public importance.  *See Pearson*, 952 F.2d at 1278.  While Ms. Bodie's complaints included that

---

[5] Like the Eleventh Circuit in *Pearson*, the court agrees that complaints of unsanitary and unsafe conditions in a city clinic are matters of "public importance."  As for the "form" of Ms. Bodie's complaints, the court recognizes that a public employees freedom of speech is not sacrificed simply because it was made privately to an employer. Bodie filed a formal grievance, and presented her complaints at a City Council meeting open to the public.  In addition, an employee's attempt at public communication is still a relevant factor in the "public concern" analysis.  *See Kurtz v. Vickery*, 855 F.2d 723, 728-9 (11th Cir. 1988).

[6] Ms. Bodie's comments regarding unsafe conditions, alone, are not a matter of public concern.  The context in which such comments were made was in response to two particular instances of inmate misconduct while they were in Ms. Bodie's presence at the clinic.  Moreover, the complaints of an unsafe working environment can also be described as incidental to Ms. Bodie's complaints of having to work alone in the clinic. Like *Pearson*, unsafe conditions are a matter of public importance, but also just as in *Pearson*, Ms. Bodie's complaints of unsafe environment concerned the circumstances of her own environment.

she was having to perform janitorial duties, the fact that she raised these complaints at a public City Council meeting and her statements received media coverage show that they were not made solely for her personal benefit. Moreover, unlike the plaintiff in *Pearson*, Bodie was not responding to charges that she was the cause of the unsanitary conditions, nor had she been recently reprimanded for the condition of the clinic. Accordingly, although the question is close as to whether Ms. Bodie's comments are criticisms responding to her situation at the clinic or are matters of public concern, the court is satisfied that statements addressing the unsanitary conditions of the clinic constitute speech on a matter of public concern.

### 2.   Balancing Test.

If a matter of public concern is implicated, then the court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. Some considerations include the effect the comments have on office disciplinary procedures, the office environment, and the normal operation of the workplace. *Rankin v. McPheeters*, 483 U.S. 378, 388 (1987). As a general rule, an employee's First Amendment rights will be protected "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Schalk v. Gallemore*, 906 F.2d 491, 496 (11th Cir. 1990). Since the City of Huntsville has not addressed, nor does the record indicate any harmful effects Ms. Bodie's statement had on the work environment, the "balancing test" must weigh in Ms. Bodie's favor.

### 3.    Motivating Factor Test.

The third step in determining whether a public employer's actions impermissibly infringe upon First Amendment rights requires the plaintiff to show her expression was a *motivating* factor in the detrimental employment decision. *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998).    The court has already articulated its decision that a detrimental employment decision was not made. Accordingly, Bodie can not meet the standard for the third prong of the analysis.  However, if the adoption of the proposal was considered detrimental, the record reflects Ms. Bodie's complaints played a role in the decision to adopt Option Three.  To survive summary judgment, Bodie must make a showing sufficient to permit a reasonable jury to find that her grievance and speech at the City Council meeting were a substantial or motivating factor behind the adoption of the proposal. *Id.* The City has presented evidence that shows that the Council did not take Ms. Bodie's grievance into account when they adopted Option Three. However, the minutes of the January 11, 1990 meeting explicitly show that Ms. Bodie's grievance was considered before a vote was taken. In addition, a City Councilman stated that by adopting Option Three, a "difficult situation" had been resolved. Consequently, a reasonable jury could find that Ms. Bodie's speech played a substantial role in the council's adoption of Option Three.

### 4.    The Same Decision Regardless of Speech.

Finally, the City of Huntsville can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *See Tindal v. Montgomery County Commission*, 32 F.3d 1535, 1540 (11th Cir. 1994). The City of Huntsville presents substantial evidence that it would have approved the proposal

regardless of Ms. Bodie's comments. First, it is undisputed that Huntsville Hospital was brought in to conduct a review and study of the City Clinic before Ms. Bodie filed her original grievance. As for the vote itself, each Councilman stated that they reviewed the proposal before the meeting. Councilman Putnam stated he believed that Huntsville Hospital could manage the City Healthcare System more effectively and improve services too. Councilman Wall stated that he believed it was in the best interests of the city for Huntsville Hospital to manage the Healthcare System and he believed that the advantages outweighed the disadvantages. Councilman Kaufmann stated that he considered who could deliver the best quality healthcare with the least cost. In addition, he thought there should be professional full-time management. Councilman Showers believed that it was in the best interests of Huntsville to place the City Healthcare system under professional management. Finally, Councilman Kling stated that the City Healthcare system could be better managed by the Hospital. In response, plaintiff has offered no contradictory direct evidence nor reasonable basis to infer any contradictory facts. As a result, summary judgment should be granted.

## IV.   Conclusion.

It is undisputed that Ms. Bodie was a faithful and compassionate employee of the City of Huntsville for almost fifteen years. Ms. Bodie took great care and great pride in the City Clinic and the medical services that she so diligently provided. In light of this passion, Ms. Bodie was honest and outspoken about the Clinic and its overall condition. However, her willingness to speak out did not result in a deprivation of constitutional rights so that she may maintain a claim under § 1983. The defects in Ms. Bodie's case begin at the most

simple point - a government policy was never executed. In this day of protocol and chain-of-command, a policy is not executed for § 1983 purposes simply because a proposal that is not binding and that has no effect as to employment conditions is adopted. In addition to the lack of a policy, Ms. Bodie's claim fails for a number of other reasons. In addition, Bodie's claim fails because the City Council's adoption of the proposal was not a decision by someone with final decisionmaking authority. Moreover, the proposal itself was subject to administrative review. Also, Ms. Bodie suffered no adverse employment action. A mere fear of the future is not itself a viable argument to indicate that an adverse employment decision has occurred. Finally, it is clear that the decision to adopt the proposal would have been made regardless of the speech. The evidence is patently clear that the guiding reason for examining a potential relationship with the Hospital was that the Council believed it was in the best interests of the City as a whole. It is finally time for Ms. Bodie and the City of Huntsville to move on. Accordingly, summary judgment is granted.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 22nd of September, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

23